QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 90378)
  johnquinn@quinnemanuel.com
  Chris A. Mathews (Bar No. 144021)
  chrismathews@quinnemanuel.com
  Tigran Guledjian (Bar No. 207613)
  tigranguledjian@quinnemanuel.com
  Justin Griffin  (Bar No. 234675)
  justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Gamevice, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMEVICE, INC., a Delaware corporation, ) | CASE NO. 3:18-cv-1942 |
| ) | |
| Plaintiff, ) | **COMPLAINT FOR PATENT INFRINGEMENT** |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| NINTENDO CO., LTD., a Japanese ) | |
| corporation, and NINTENDO OF ) | |
| AMERICA, INC., a Washington corporation ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

07714-00002/9936686.4

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Gamevice, Inc. ("Gamevice") hereby asserts the following claims for patent infringement against Defendants Nintendo Co., Ltd. and Nintendo of America, Inc. (collectively, "Nintendo" or "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

2.    Defendants have infringed and continue to infringe, have contributed to and continue to contribute to the infringement of, and have induced and continue to induce infringement of, one or more claims of Gamevice's U.S. Patent Nos. 9,855,498 ("the '498 patent") and 9,808,713 ("the '713 patent") (collectively, "Asserted Patents") at least by importing, selling and offering to sell the Nintendo Switch portable gaming console system, and components thereof.

3.    Gamevice is the legal owner by assignment of the '498 and '713 patents, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Gamevice seeks injunctive relief and monetary damages.

**THE PARTIES**

4.    Gamevice, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 685 Cochran St., Suite 200, Simi Valley, CA 93065.

5.    Upon information and belief, defendant Nintendo Co., Ltd. ("Nintendo Japan") is a corporation organized and existing under the laws of Japan with its principal place of business at 11-1 Hokotate-cho, Kamitoba, Minami-ku, Kyoto, Japan 601-8501.  On information and belief, Nintendo Japan designs, develops, tests, manufactures (or has manufactured on its behalf), sells, and/or offers to sell in the United States, including this District, video game consoles, handheld videogame systems, video games, accessories, and components of the foregoing products, including the infringing Nintendo Switch portable gaming console system with attachable handheld controllers, and components thereof.

6. Upon information and belief, defendant Nintendo of America, Inc. ("NOA") is a corporation organized under the laws of Washington, having a principal place of business at 4600 150th Avenue NE, Redmond, Washington 98052. NOA also has a regular and established place of business in this District at 2000 Bridge Pkwy #200, Redwood City, California 94065. NOA is in the business of importing, marketing, advertising, and selling video game consoles, handheld videogame systems, video games, and accessories in the United States, including in this District.

7. NOA is a wholly owned subsidiary of Nintendo Japan

8. Upon information and belief and as further explained below, Defendants have been and are acting in concert, and are liable jointly, severally or otherwise for a right to relief related to or arising out of the same transaction, occurrence or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the Nintendo Switch portable gaming console system in this District. In addition, this action involves questions of law and fact that are common to all Defendants.

## JURISDICTION AND VENUE

9. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

10. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11. Defendants are subject to this Court's personal jurisdiction. Defendants have infringed the Asserted Patents in this District by, among other things, engaging in infringing conduct within and directed at or from this District. For example, Defendants have purposefully and voluntarily placed the Nintendo Switch portable gaming console systems into the stream of commerce with the expectation that these infringing products will be used in this District. These infringing products have been and continue to be sold and used in this District.

12. On information and belief, NOA has a regular and established place of business located in the Northern District of California at its facility at 2000 Bridge Pkwy #200, Redwood City, California 94065. NOA is a registered business entity in California with the California Secretary of State, and has an agent for service of process, CT Corporation System, located in

07714-00002/9936686.4

COMPLAINT FOR PATENT INFRINGEMENT

California at 818 W. Seventh St. Suite 930, Los Angeles, CA 90017.  Furthermore, NOA regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in this District and in this State.  Additionally, NOA has committed acts of patent infringement in this District.  Accordingly, NOA has purposefully availed itself of the privilege of conducting business within this District; has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being haled into court in this District; has purposefully directed activities at residents of this State and District; and has committed acts of patent infringement in this State and District.

13.    On information and belief, Nintendo Japan regularly conducts business in the Northern District of California itself and through its authorized agent and subsidiary NOA at NOA's facility at 2000 Bridge Pkwy #200, Redwood City, CA 94065.  On information and belief, NOA provides comprehensive North American business operations for Nintendo Japan, at least with respect to its Nintendo Switch business.  As explained above, NOA regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in this District and in this State, and has committed acts of patent infringement in this District.  Because, on informational and belief, NOA is an authorized agent of Nintendo Japan, all of NOA's conduct is also imputed to Nintendo Japan as the principal.  Accordingly, through its own actions and the actions of its authorized agent, Nintendo Japan has purposefully availed itself of the privilege of conducting business within this District; has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being haled into court in this District; has purposefully directed activities at residents of this State and District; and has committed acts of patent infringement in this State and District.

14.    NOA has also availed itself to the jurisdiction of this Court by filing complaints and counterclaims in this District (*e.g.*, *Nintendo of America v. Serrano*, Case No. 10-cv-01563-PSG).  Moreover, NOA has successfully moved to transfer actions into this district on the grounds that this district is "convenient" for NOA, including because NOA's "largest marketing and sales

office is in Redwood City, California," and "more than 70 employees work in this office." *See, e.g., PlayVision Labs, Inc. v. Nintendo of America, Inc.*, Case. No. 14-05365.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Nintendo Japan and NOA conduct business in the State of California, including this District, have committed acts of infringement in this State and in this District, have a regular and established place of business in this District, and are subject to personal jurisdiction in this District.

**GAMEVICE'S HISTORY AND PATENTED TECHNOLOGY**

16.    Gamevice is a leading designer, developer and manufacturer of attachable handheld controllers for use with mobile devices such as mobile phones and tablets, including various generations of the Apple iPhone and Apple iPad.  Gamevice has made substantial investment in research and development of its attachable handheld controller products for portable gaming systems.

17.    Gamevice was originally founded in 2008 (under the name Wikipad, Inc.) to develop and create innovative solutions for those who play video games.  Its first product, the Wikipad, was a full function, Android-based, touch screen tablet computer that included attachable game controllers.  Recognizing the growing migration of popular console-based video games to handheld mobile devices, as well as the overall explosive growth in mobile device ownership, Gamevice continued to innovate in the area of mobile controller technology.  In 2015, Gamevice launched its namesake device, the "Gamevice," an attachable game controller that provides true gaming controls for use with a smartphone or tablet.  The Gamevice controller transforms a smartphone or tablet into a full-fledged portable gaming platform, with console quality controls.  In addition to being able to play over 1,000 mobile games, the Gamevice controller can also be used as an improved controller, as compared to prior art controllers, in other, non-gaming mobile applications; for example, to allow a smartphone to be used to navigate remote controlled drones and robots.

18.    Shown below is the Gamevice attachable handheld controller for the iPhone (iPhone X, iPhone 8 / 8 Plus, iPhone 7 / 7 Plus, iPhone 6s / 6s Plus, iPhone 6 / 6 Plus):

07714-00002/9936686.4                         COMPLAINT FOR PATENT INFRINGEMENT



19.    Gamevice also makes a Gamevice attachable handheld controller for certain iPad models (iPad mini 4, iPad mini 3, iPad mini 2, iPad mini; iPad, 9.7-inch iPad Pro, iPad Air 2, iPad Air; 10.5 inch iPad Pro; and 12.9-inch iPad Pro).  These are shown below:




Gamevice for
iPad mini 4, iPad mini 3, iPad mini 2, iPad mini

Gamevice for
iPad, 9.7-inch iPad Pro, iPad Air 2, iPad Air




Gamevice for 10.5-inch iPad Pro

Gamevice for 12.9-inch iPad Pro

20.    Gamevice has filed for patent protection on its innovations, and currently holds over 38 patents in 16 countries related to a range of gaming devices, controls and accessories.

21.    The '498 patent, granted by the United States Patent and Trademark Office on January 2, 2018, is entitled "Game Controller with Structural Bridge."  Gamevice is the current

owner of the '498 patent.  A true and correct copy of the '498 patent is attached hereto as Exhibit A.

22.    The '713 patent, granted by the United States Patent and Trademark Office on July 28, 2017, is entitled "Game Controller with Structural Bridge."  Gamevice is the current owner of the '713 patent.  A true and correct copy of the '713 patent is attached hereto as Exhibit B.

23.    Gamevice is the owner of all right, title, and interest in and to each of the Asserted Patents with full and exclusive right to bring suit to enforce the Asserted Patents, including the right to recover for past damages and/or royalties.

24.    The Asserted Patents are valid and enforceable.

### ACTS GIVING RISE TO THIS ACTION

25.    On October 20, 2016, Nintendo unveiled a new home gaming console, the Nintendo Switch portable gaming console system.

26.    The Nintendo Switch is a portable gaming console system with attachable handheld controllers that Nintendo markets as a "home console that you can take anywhere."  The Nintendo Switch is imported and sold in the United States by Defendants in a box that contains the bundled Switch console, the Switch Dock, a left and right attachable handheld Joy-Con Controller, a Joy-Con Grip, a pair of Joy-Con Wrist Straps (that can be used with the Joy-Con Controllers when the Joy-Con Controllers are used detached from the Switch console or the Joy-Con Grip), an HDMI cable to connect the Dock to a television, and an AC power adapter.  The following image from Nintendo's website at *www.nintendo.com/switch/buy-now/* displays the contents of the Nintendo Switch box.

COMPLAINT FOR PATENT INFRINGEMENT



27.    Separately from its sale and importation of the Nintendo Switch, Nintendo also sells and imports in the United States infringing components of the Switch portable gaming console system, for example the Joy-Con Controllers and Joy-Con Charging Grips, as shown below (from *www.nintendo. com/switch/buy-now/website*).

28.    The Switch can be "switched" for use between three different modes: handheld mode, TV mode, and tabletop mode.

29.    In handheld mode, users attach the two Joy-Con Controllers to attachment rails located adjacent to each side of the Switch console, creating a portable, handheld gaming device.

The following images show the Switch in handheld mode with the left and right Joy-Con Controllers[1] attached to the attachment rails located adjacent to the sides of the Switch console.







30.     In "TV mode," the Switch is placed in the Nintendo Switch Dock, connected to a television, and games are played using the left and right Joy-Con Controllers—either by attaching the Joy-Con Controllers to the Joy-Con Grip included with the bundled Switch, or holding them in

[1]   Nintendo sells the attachable Joy-Con Controllers in different colors, including at least gray, neon red, neon blue, and yellow.

the left and right hands.[2]  The following images illustrate the act of switching from handheld mode to TV mode, including (1) removing the Joy-Con Controllers from the attachment rails of the Switch console, (2) attaching the Joy-Con Controllers to the Joy-Con Grip, and (3) placing the Switch console in the Dock.

(1)                                (2)                                (3)

31.    Finally, the Switch can be switched to "tabletop mode" by extending a stand from behind the console, thereby allowing users to play games while the Switch is placed upright on a table.  Just as in TV mode, in tabletop mode users either attach the Joy-Con Controllers to the Joy-Con Grip or hold them in the left and right hand.

32.    Each attachable Joy-Con Controller contains a rechargeable battery with limited battery life (approximately 20 hours).[3]  Thus, continued use of the Nintendo Switch requires that the Joy-Con Controllers be recharged periodically, either by electrically connecting the Joy-Con Controllers to the Switch console or to the separately sold Joy-Con Charging Grip.  Nintendo explains how to recharge the Joy-Con Controllers on its support website (excerpted below).  *See http://en-americas-support.nintendo.com/app/answers/detail/a_id/22361/~/how-to-charge-the-joy-con-controllers*.

---

[2]   According to Nintendo, attaching the Joy-Con Controllers to the included Joy-Con Grip creates "one larger controller," similar to traditional video game controllers.  (*See, e.g., www.nintendo.com/ switch/buy-now/*.)

[3] *See https://www.nintendo.com/switch/features/tech-specs/* ("Battery life" is "Approximately 20 hours").

## How to Charge the Joy-Con Controllers

Applies to: **Nintendo Switch**

Instructions for charging the Joy-Con controllers.

🛈 **Additional Information:**

- It takes approximately 3 ½ hours to fully charge the Joy-Con controllers.
- The Joy-Con Charging Grip (model No. HAC-012) is not included in the Nintendo Switch bundle. This product is sold separately.

☑ **Complete These Steps:**

The Joy-Con can be charged in the following ways:

**While attached to the Nintendo Switch console.**

1. **Attach the Joy-Con** to the Nintendo Switch console and power it on.

   - In order for the Joy-Con to charge while attached to the Nintendo Switch console, the console must be connected to the AC adapter and powered on or in Sleep Mode.

2. **Charge** the console.



**While attached to the Joy-Con Charging Grip.**

1. **Attach the Joy-Con** to the Joy-Con Charging Grip.

2. Connect the Joy-Con Charging Grip to the Nintendo Switch dock using the USB cable that was included with the Charging Grip, or connect it directly to the Nintendo Switch AC adapter (HAC-002).



33. One or more of the valid and enforceable claims of the of the Asserted Patents covers the Nintendo Switch portable gaming console system, including when the Joy-Con Controllers are assembled together with the Switch console, Joy-Con Grip, or Joy-Con Charging Grip.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,855,498

34. Gamevice incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

35. Defendants have directly infringed and are currently directly infringing claims of the '498 patent literally and/or under the doctrine of equivalents by making, using, selling, offering

07714-00002/9936686.4

for sale, and/or importing into the United States, without authority, products and equipment that embody one or more claims of the '498 patent, including but not limited to the Nintendo Switch. For example, on information and belief, Defendants operate brick-and-mortar stores in the United States—for example, "Nintendo NY," a store open to the public and located at 10 Rockefeller Plaza, New York, NY 10020, and an employees-only store located at 4600 150th Ave NE, Redmond, WA 98052—that carry the Nintendo Switch portable gaming console systems for sale and where Defendants at least test, demonstrate, repair, support, use and/or otherwise operate the Nintendo Switch portable gaming console system in a manner that infringes the '498 patent.  At least because of the foregoing acts, Defendants directly infringe claims of the '498 patent.

36.     As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary claim 1 of the '498 patent in connection with the Nintendo Switch.  This description is based on publicly available information.  Gamevice reserves the right to modify this description, including, for example, on the basis of information about the Nintendo Switch that it obtains during discovery.

1(a) *A combination comprising:*  The Nintendo Switch portable gaming console system is a combination of the claimed elements, as described below.

1(b) *a computing device, comprising an electronic display screen;* The Nintendo Switch portable gaming console system includes the Nintendo Switch console. The Switch console includes a computing device having an electronic display screen.



1(c) *a pair of confinement structures, the pair of confinement structures interacting with the computing device and adjacent at least two opposing sides of the computing device, but not more than three sides of the sides of the computing device, the at least two opposing sides of the computing device support the electronic display screen, each of the pair of confinement structures comprising a communication link, each of the communication links configured for electronic communication with the computing device;* The Nintendo Switch console includes a pair of confinement structures (also referred to as rails) that interact with the computing device on two opposite sides of the computing device, which sides support the display. Each of the confinement structures of the Nintendo Switch provides a communication link configured for electronic communication with the computing device.





07714-00002/9936686.4                    COMPLAINT FOR PATENT INFRINGEMENT



1(d)(i) *a rigid structural bridge disposed between the pair of confinement structures,* The Nintendo Switch Console includes a structural bridge between the two confinement structures, as depicted below.



Structural Bridge



Confinement Structures

Structural Bridge

-14-                                    Case No. 3:18-cv-1942

1(d)(ii) *the rigid structural bridge comprising a passageway between the pair of confinement structures, the passageway promotes electrical communication between the communication link of a first confinement structure of the pair of confinement structures and the computing device, the passageway further promotes electrical communication between the communication link of a second confinement structure of the pair of confinement structures and the computing device;* The structural bridge includes a passageway within which the communication link from each confinement structure connects to the computing device, thereby promoting communication between each of the communication links and the computing device.



Inside Passageway
(Looking Left)

Inside Passageway
(Looking Right)



Inside Passageway
(Looking Left)

Inside Passageway
(Looking Right)

07714-00002/9936686.4

COMPLAINT FOR PATENT INFRINGEMENT

1(e) *fastening mechanisms, the fastening mechanisms secures the first confinement structure to the rigid structural bridge, the fastening mechanisms further secure the second confinement structure to the rigid structural bridge; and* The two opposing sides of the structural bridge of the Nintendo Switch include multiple threaded holes (fastening mechanisms), which, together with threaded screws, secure the confinement structures to the two opposing sides of the structural bridge.



1(f)(i)  *a pair of control modules, each control module of the pair of control modules interacting with a corresponding confinement structure of the pair of confinement structures,* The Nintendo Switch portable gaming console system includes two Switch Joy-Con Controllers that are each a control module, and together comprise a pair of control modules.  Each Joy-Con Controller is specifically designed to interact with a confinement structure of the pair of confinement structures in order to secure the Joy-Con Controller to the side of the structural bridge.  In this manner, the Nintendo Switch may be used in what Nintendo refers to as the "handheld mode."





Control Modules



Control Modules

Confinement
Structures



1(f)(ii) *each control module in electronic communication with the communication link of its corresponding confinement structure,* Each Joy-Con Controller includes communication pins,

COMPLAINT FOR PATENT INFRINGEMENT

07714-00002/9936686.4

located at the end of the Joy-Con Controllers' own rail structure (for mating with the confinement structure).



When attached to its corresponding confinement structure, each Joy-Con Controller is in electronic communication with the communication link of that confinement structure.



1(g)(i) *each of the pair of control modules providing input module apertures, each input module aperture secures an instructional input device,* Each Joy-Con Controller (control module) includes multiple apertures in which are secured multiple instructional input devices, including joysticks and buttons.



Instructional Input Devices

Input Module Apertures

1(g)(ii) *wherein said input module apertures are adjacent each of the at least two opposing sides of the computing device, and* When the Joy-Con Controllers are attached to the sides of the Switch console (so that a customer may play in handheld mode), the input module apertures are adjacent to each of the opposing sides of the computing device.



1(h) *wherein the input device is a separate and distinct structure from the pair of confinement structures, forming no structural portion of the pair of confinement structures, and in which each of the pair of confinement structures are separate and distinct structures from the structural bridge, forming no structural portion of the structural bridge.* The buttons and joysticks on the Joy-Con Controllers (input device) are separate and distinct structures from either of the pair of confinement structures, and the confinement structures are separate and distinct structures from the structural bridge, forming no structural portion of the structural bridge.



37.    At least as early as the filing and service of this Complaint, Defendants Nintendo Japan and NOA are also indirectly infringing claims of the '498 patent.

38.    Defendants have actual knowledge of Gamevice's rights in the '498 patent and details of their infringement of the '498 patent based on at least the filing and service of this Complaint.

39.    On information and belief, Defendants also have knowledge of the '498 patent before the filing and service date of this Complaint, including, without limitation, through their knowledge of Gamevice, and Gamevice's marking its patents on its covered products.  Upon issuance of the '498 patent, Gamevice began marking its covered products, either directly with the patent numbers, or virtually under 35 U.S.C. § 287(a) by citation on its products to a website (*https://gamevice.com/pages/patents*) that lists the patents that cover its products, including the '498 patent.  On information and belief, discovery will show that Defendants had knowledge of the '498 patent before the filing and service date of this Complaint for the additional reason that Defendants cited in their own patent applications that they filed in the United States Patent and Trademark Office, including for the Nintendo Switch, certain United States and foreign counterparts to the patent applications that matured into the '498 patent.  For example, on information and belief, Defendants became aware of U.S. Patent No. 8,944,912 ("'912 patent"), which the '498 patent claims priority to, on or around December 16, 2015, when it was cited during prosecution of Defendants' U.S. Application Serial No. 14/058,882.  As another example, Defendants were aware of U.S. Patent Nos. 8,529,357 ("'357 patent") and 9,005,025 ("'025 patent") because they were cited during prosecution of Defendants' design patent (D808,967).  The

07714-00002/9936686.4                        COMPLAINT FOR PATENT INFRINGEMENT

'357 and '025 patents are both in the same family as the '498 patent.  As yet another example, Defendants cited U.S. Publication No. 2013/0154542, which is in the same family as the '498 patent, and a European Search Report that cited European Patent No. 2,772,825, a foreign counterpart to the '498 patent, in multiple of Defendants' United States patent applications directed to the accused Nintendo Switch.  Further, on information and belief, discovery will show Defendants are aware of the '498 patent because Gamevice filed a complaint against Defendants in the United States District Court for the Central District of California on August 9, 2017 asserting Gamevice's U.S. Patent No. 9,126,119 ("the '119 patent"), which is in the same family as the '498 patent, and as a result of which, discovery will show that Defendants became aware of the '498 patent.

40.     In addition to directly infringing claims of the '498 patent, Defendants manufacture, use, import, offer for sale, and/or sell the Nintendo Switch with knowledge of or willful blindness to the fact that their actions will induce their retail partners and end-users to infringe the '498 patent in violation of 35 U.S.C. § 271.  For example, Defendants actively and knowingly induce end-users to infringe the '498 patent by teaching, directing, encouraging, and/or requiring end-users to use the Nintendo Switch in an infringing manner, with the specific intent to cause direct infringement by end-users.

41.     For example, Defendants require end-users to assemble the attachable handheld Joy-Con Controllers together with the Switch console and/or the Joy-Con Grip or Joy-Con Charging Grip (an arrangement covered by claims of the '498 patent) in order to play games or recharge the Joy-Con Controllers, as explained above.  Moreover, Defendants provide directions, instruction manuals, guides and other materials that encourage direct, require, and facilitate infringing use by end-users.  On the box in which the Switch is sold, on Defendants' website, in advertising and marketing videos, in "how-to" videos, in user manuals, and elsewhere, Defendants prominently display the Joy-Con Controllers assembled together with the Switch console, a Joy-Con Grip and/or a Joy-Con Charging Grip.  For instance, Defendants' website shows and instructs end-users how to assemble the attachable handheld Joy-Con Controllers together with the Switch console, as shown below (from *https://www.nintendo.com/switch/features/*).

-21-                                          Case No. 3:18-cv-1942





42.    The box in which the bundled Nintendo Switch portable gaming console system with attachable handheld controllers is sold includes instructions and images that teach customers how to set up the Switch by attaching the Joy-Con Controllers to the attachment rails to play games on the Switch portable gaming console in handheld mode, and to charge the Joy-Con Controllers.  The following instructions and images appear on the Switch's box:





COMPLAINT FOR PATENT INFRINGEMENT

43. Indeed, during the process of setting up the Switch, after a customer powers it on for the first time, an instruction displayed on the Switch screen states: "If the Joy-Con Controllers run out of power, attach them to the console to charge them. To fully charge the controllers, attach them to the console while it is charging. A full charge takes about three and a half hours."



44. Furthermore, Defendants' website instructs users that the Joy-Con Controllers should be electronically connected to the Switch console in the infringing manner at the time of first set-up, shown below (from *http://en-americas-support.nintendo.com/app/answers/detail/a_id/ 22501/~/nintendo-switch-first-time-setup-and-connection*).

07714-00002/9936686.4                    COMPLAINT FOR PATENT INFRINGEMENT



### Nintendo Switch First-Time Setup and Connection

Applies to: Nintendo Switch

Instructions on how to set up your Nintendo Switch system for the first time.

☑ Complete These Steps:

1. Connect the AC adapter to the system.

- Connect the USB plug from the Nintendo Switch AC adapter into the USB connector on the bottom of the console, then connect the AC adapter into the wall outlet.
- The system will power on after you connect the AC adapter provided.

2. Attach the Joy-Con controllers to the Nintendo Switch console.



3. Follow the on-screen prompts to complete the first-time setup.

45.    Defendants also operate brick-and-mortar stores in the United States—including the Nintendo NY store and the employees-only store in Redmond, Washington discussed above—that carry the Nintendo Switch and the components thereof and where Defendants at least invite, direct, instruct, and show end-users how to use the products in the infringing manner.  On information and belief, Defendants also facilitate and encourage end-users to operate the products in an infringing manner by providing repair and testing services for the Nintendo Switch, including through their agents and subcontractors.  Further, on information and belief, Defendants

employ "Retail Representatives" in the United States who provide product demonstrations, education, services, and product maintenance to retail store employees and to end-users.

46. Defendants are on notice of Gamevice's rights in the '498 patent and their infringement thereof, and induce infringement of claims of the '498 patent by providing the Nintendo Switch portable gaming console system with attachable handheld controllers, as well as separately sold components such as the Joy-Con Controllers and Joy-Con Charging Grip to end-users along with instructions to use the products in an infringing manner.

47. Defendants also contribute to the infringement of the '498 patent in violation of 35 U.S.C. § 271. Defendants know that infringing components of the Nintendo Switch (including the Nintendo Switch portable gaming console system and separately sold components such as the Joy-Con Controllers and Joy-Con Charging Grip) are especially made or especially adapted for use in the infringement of the '498 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '498 patent. Defendants clearly intend to have at least end-users use these components to create the infringing products, for example by assembling the Joy-Con Controllers together with the Switch console, Joy-Con Grip, or Joy-Con Charging Grip (in arrangements covered by the claims of the '498 patent). As set forth above, Defendants direct and instruct customers to assemble and use the components in an infringing manner. The components are especially made to be combined with the other components of the Switch system for use in an infringement of claims of the '498 patent. For example, the bundled Nintendo Switch portable gaming console system is sold and imported with the Switch console, Joy-Con Controllers, and Joy-Con Charging Grip in one box. As explained above, to recharge the Joy-Con Controllers purchasers of the bundled Switch system must assemble together the Joy-Con Controllers and the Switch console, and such use of the bundled Nintendo Switch infringes claims of the '498 patent. Defendants are aware that, absent infringement, the bundled Switch system will not have a substantial use because the Joy-Con Controllers need to be assembled in the infringing manner to recharge. Similarly, Defendants are aware that separately sold components such as the Joy-Con Controllers and Joy-Con Charging

Grip are specifically designed for assembly into an infringing arrangement. In any use of the Joy-Con Controllers, each Controller ultimately must be electronically connected to the Switch console or Joy-Con Charging Grip (in an arrangement covered by claims of the '498 patent) for charging and continued use. Consequently, there is no substantial non-infringing use to the Nintendo Switch portable gaming console system, or separately sold components such as the Joy-Con Controllers and Joy-Con Charging Grip.

48. Defendants' infringement has caused, and is continuing to cause, damage and irreparable injury to Gamevice, and Gamevice will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

49. Gamevice is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,808,713

50. Gamevice incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

51. Defendants have directly infringed and are currently directly infringing claims of the '713 patent literally and/or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing into the United States, without authority, products and equipment that embody one or more claims of the '713 patent, including but not limited to the Nintendo Switch. For example, on information and belief, Defendants operate brick-and-mortar stores in the United States—for example, "Nintendo NY," a store open to the public and located at 10 Rockefeller Plaza, New York, NY 10020, and an employees-only store located at 4600 150th Ave NE, Redmond, Washington 98052—that carry the Nintendo Switch portable gaming console systems for sale and where Defendants at least test, demonstrate, repair, support, use and/or otherwise operate the Nintendo Switch portable gaming console system in a manner that infringes the '713 patent. At least because of the foregoing acts, Defendants directly infringe claims of the '713 patent.

52. As just one non-limiting example, set forth below (with claim language in italics) is a description of infringement of exemplary claim 1 of the '713 patent in connection with the

-26-                                          Case No. 3:18-cv-1942

COMPLAINT FOR PATENT INFRINGEMENT

Nintendo Switch.  This description is based on publicly available information.  Gamevice reserves the right to modify this description, including, for example, on the basis of information about the Nintendo Switch that it obtains during discovery.

1(a) *A combination comprising:*  The Nintendo Switch portable gaming console system is a combination of the claimed elements, as described below.

1(b) *a computing device, the computing device providing an upper, lower, left and right side, collectively the sides of the computing device, and an electronic display screen, the electronic display screen having a corresponding side adjacent each of the sides of the computing device;* The Nintendo Switch portable gaming system includes the Nintendo Switch console.  The Switch console includes a computing device with an upper, lower, left and right side.



The Switch console also includes an electronic display screen that also provides an upper, lower, left and right side.  Each of these sides of the electronic display screen are adjacent to each corresponding side of the computing device.

07714-00002/9936686.4                              COMPLAINT FOR PATENT INFRINGEMENT



1(c) *a pair of confinement structures, the pair of confinement structures adjacent to and confining the computing device on at least two opposing sides, but not more than three sides of the sides of the computing device, and in which a first confinement structure of the pair of confinement structures provides a first communication link, while a second confinement structure of the pair of confinement structures provides a second communication link;* The Nintendo Switch console includes a pair of confinement structures (also referred to as rails) adjacent to and confining the computing device on two sides, as depicted below.  Each of the confinement structures of the Nintendo Switch provides a communication link.



1(d)(i) *a structural bridge disposed between the pair of confinement structures, the structural bridge comprising,* The Nintendo Switch console includes a structural bridge between the two confinement structures, as depicted below.

-28-    Case No. 3:18-cv-1942

 

1(d)(ii) *a passageway between the pair of confinement structures, the passageway promotes communication between the first communication link and the computing device, the passageway further promotes communication between the second communication link and the computing device;* The structural bridge includes a passageway within which the communication link from each confinement structure connects to the computing device, thereby promoting communication between each of the communication links and the computing device.

 

1(e) *fastening mechanisms, the fastening mechanisms secure the first confinement structure to a first side of the structural bridge, and further in which the fastening mechanisms secure the second confinement structure to a second side of the structural bridge; and* The two opposing sides of the structural bridge of the Nintendo Switch include multiple threaded holes (fastening mechanisms), which, together with threaded screws, secure the confinement structures to the two opposing sides of the structural bridge.

07714-00002/9936686.4
COMPLAINT FOR PATENT INFRINGEMENT





1(f)(i) *an input device, the input device comprising a pair of control modules, each control module of the pair of control modules secured to a corresponding confinement structure of the pair of confinement structures,* The Nintendo Switch portable gaming console system includes an input device comprised of the two Switch Joy-Con Controllers that are each a control module, and together comprise a pair of control modules.  Each Joy-Con Controller is specifically designed to be secured to a confinement structure of the pair of confinement structures secured to the side of the structural bridge.  In this manner, the Nintendo Switch may be used in what Nintendo refers to as the "handheld mode."

Case No. 3:18-cv-1942

07714-00002/9936686.4                              COMPLAINT FOR PATENT INFRINGEMENT







1(f)(ii) *an input device, the input device comprising a pair of control modules, each control module of the pair of control modules secured to a corresponding confinement structure of the pair of confinement structures,* Each Joy-Con Controller includes communication pins, located at the end of the Joy-Con Controller's own rail structure (for mating with the confinement structure).



07714-00002/9936686.4

COMPLAINT FOR PATENT INFRINGEMENT

1(f)(iii)  *each control module in electronic communication with the communication link of its corresponding confinement structure,* When attached to its corresponding confinement structure, each Joy-Con Controller is in electronic communication with the communication link of that confinement structure.



Joy-Con Communication Pins

Confinement Structure

Communication Link

1(g)(i) *each of the pair of control modules providing input module apertures, each input module aperture secures an instructional input device,* Each Joy-Con Controller (control module) includes multiple apertures in which are secured multiple instructional input devices, including joysticks and buttons.

Instructional Input Devices

Input Module Apertures

1(g)(ii) *wherein said input module apertures are adjacent each of the at least two opposing sides of the sides of the computing device,* When the Joy-Con Controllers are attached to the sides of the Switch console (so that a customer may play in handheld mode), the input module apertures are adjacent to each of the opposing sides of the computing device.



1(h) *and wherein the input device is a separate and distinct structure from either of the pair of confinement structures, forming no structural portion of either of the pair of confinement structures, and in which the confinement structures are separate and distinct structures from the structural bridge, forming no structural portion of the structural bridge.* The pair of Joy-Con Controllers (input device) is a separate and distinct structure from either of the pair of confinement structures, and the confinement structures are separate and distinct structures from the structural bridge, forming no structural portion of the structural bridge.



53. At least as early as the filing and service of this Complaint, Defendants Nintendo Japan and NOA are also indirectly infringing claims of the '713 patent.

54. Defendants have actual knowledge of Gamevice's rights in the '713 patent and details of their infringement of the '713 patent based on at least the filing and service of this Complaint.

55.    On information and belief, Defendants also have knowledge of the '713 patent before the filing and service date of this Complaint, including, without limitation, through their knowledge of Gamevice, and Gamevice's marking its patents on its covered products.  Upon issuance of the '713 patent, Gamevice began marking its covered products, either directly with the patent numbers, or virtually under 35 U.S.C. § 287(a) by citation on its products to a website (*https://gamevice.com/pages/patents*) that lists the patents that cover its products, including the '713 patent.  On information and belief, discovery will show that Defendants had knowledge of the '713 patent before the filing and service date of this Complaint for the additional reason that Defendants cited in their own patent applications that they filed in the United States Patent and Trademark Office, including for the Nintendo Switch, certain United States and foreign counterparts to the patent applications that matured into the '713 patent.  For example, on information and belief, Defendants became aware of the '912 patent, which the '713 patent claims priority to, on or around  December 16, 2015, when it was cited during prosecution of Defendants' U.S. Application Serial No. 14/058,882.  As another example, Defendants were aware of the '357 patent and '025 patent because they were cited during prosecution of Defendants' design patent (D808,967).  The '357 and '025 patents are both in the same family as the '713 patent.  As yet another example, Defendants cited U.S. Publication No. 2013/0154542, which is in the same family as the '713 patent, and a European Search Report that cited European Patent No. 2,772,825, a foreign counterpart to the '713 patent, in multiple of Defendants' United States patent applications directed to the accused Nintendo Switch.  Further, on information and belief, discovery will show Defendants are aware of the '713 patent because Gamevice filed a complaint against Defendants in the United States District Court for the Central District of California on August 9, 2017 asserting Gamevice's '119 patent, which is in the same family as the '713 patent, and as a result of which, discovery will show that Defendants became aware of the '713 patent.

56.    In addition to directly infringing claims of the '713 patent, Defendants manufacture, use, import, offer for sale, and/or sell the Nintendo Switch with knowledge of or willful blindness to the fact that their actions will induce their retail partners and end-users to infringe the '713 patent in violation of 35 U.S.C. § 271.  For example, Defendants actively and knowingly induce

-34-                                    Case No. 3:18-cv-1942

end-users to infringe the '713 patent by teaching, directing, encouraging, and/or requiring end-users to use the Nintendo Switch in an infringing manner, with the specific intent to cause direct infringement by end-users.

57. For example, Defendants require end-users to assemble the attachable handheld Joy-Con Controllers together with the Switch console (an arrangement covered by claims of the '713 patent) in order to play games or recharge the Joy-Con Controllers, as explained above. Moreover, Defendants provide directions, instruction manuals, guides and other materials that encourage direct, require, and facilitate infringing use by end-users.  On the box in which the Switch is sold, on Defendants' website, in advertising and marketing videos, in "how-to" videos, in user manuals, and elsewhere, Defendants prominently display the Joy-Con Controllers assembled together with the Switch console.  For instance, Defendants' website shows and instructs end-users how to assemble the attachable handheld Joy-Con Controllers together with the Switch console, as shown below (from *https://www.nintendo.com/switch/features/*).






58. The box in which the bundled Nintendo Switch portable gaming console system with attachable handheld controllers is sold includes instructions and images that teach customers how to set up the Switch by attaching the Joy-Con Controllers to the attachment rails to play games on the Switch portable gaming console in handheld mode, and to charge the Joy-Con Controllers.  The following instructions and images appear on the Switch's box:





59.    Indeed, during the process of setting up the Switch, after a customer powers it on for the first time, an instruction displayed on the Switch screen states:  "If the Joy-Con Controllers run out of power, attach them to the console to charge them.  To fully charge the controllers, attach them to the console while it is charging.  A full charge takes about three and a half hours."



COMPLAINT FOR PATENT INFRINGEMENT

60. Furthermore, Defendants' website instructs users that the Joy-Con Controllers should be electronically connected to the Switch console in the infringing manner at the time of first set-up, shown below (from *http://en-americas-support.nintendo.com/app/answers/detail/a_id/22501/~/nintendo-switch-first-time-setup-and-connection*).

## Nintendo Switch First-Time Setup and Connection

Applies to:  Nintendo Switch

Instructions on how to set up your Nintendo Switch system for the first time.

☑ **Complete These Steps:**

1. Connect the AC adapter to the system.



- Connect the USB plug from the Nintendo Switch AC adapter into the USB connector on the bottom of the console, then connect the AC adapter into the wall outlet.
- The system will power on after you connect the AC adapter provided.

2. **Attach the Joy-Con controllers** to the Nintendo Switch console.



3. Follow the on-screen prompts to complete the first-time setup.

61. Defendants also operate brick-and-mortar stores in the United States—including the Nintendo NY store and the employees-only store in Redmond, Washington discussed above—that carry the Nintendo Switch and the components thereof and where Defendants at least invite, direct, instruct, and show end-users how to use the products in the infringing manner.  On information and belief, Defendants also facilitate and encourage end-users to operate the products in an infringing manner by providing repair and testing services for the Nintendo Switch, including through their agents and subcontractors.  Further, on information and belief, Defendants employ "Retail Representatives" in the United States who provide product demonstrations, education, services, and product maintenance to retail store employees and to end-users.

62. Defendants are on notice of Gamevice's rights in the '713 patent and their infringement thereof based on at least the filing and service of this Complaint, and induce infringement of claims of the '713 patent by providing the Nintendo Switch portable gaming console system with attachable handheld controllers, as well as separately sold components such as the Joy-Con Controllers, to end-users along with instructions to use the products in an infringing manner.

63. Defendants also contribute to the infringement of claims of the '713 patent in violation of 35 U.S.C. § 271. Defendants know that infringing components of the Nintendo Switch (including the Nintendo Switch portable gaming console system with attachable handheld controllers and separately sold components such as the Joy-Con Controllers) are especially made or especially adapted for use in the infringement of claims of the '713 patent. The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '713 patent. Defendants clearly intend to have their customers use these components to create the infringing product. As set forth above, Defendants direct and instruct customers to assemble and use the components in an infringing manner. The components are especially made to be combined with the other components of the Switch system for use in an infringement of claims of the '713 patent. For example, the bundled Nintendo Switch portable gaming console system is sold and imported with the Switch console and Joy-Con Controllers in one box. As explained above, to recharge the Joy-Con Controllers purchasers of the bundled Switch system must assemble together the Joy-Con Controllers and the Switch console (in an arrangement covered by the claims of the '713 patent). Defendants are aware that, absent infringement, the bundled Switch system will not have a substantial use because the Joy-Con Controllers need to be assembled in the infringing manner to recharge. Similarly, Defendants are aware that separately sold components—such as the Joy-Con Controllers—are specifically designed for assembly into an infringing arrangement. In any use of the attachable handheld Joy-Con Controllers, each Controller ultimately must be electronically connected to the Switch console (in an arrangement covered by claims of the '713 patent) for charging and continued use.

Consequently, there is no substantial non-infringing use to the Nintendo Switch portable gaming console system, or separately sold components such as the Joy-Con Controllers.

64.    Defendants' infringement has caused, and is continuing to cause, damage and irreparable injury to Gamevice, and Gamevice will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

65.    Gamevice is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

### PRAYER FOR RELIEF

WHEREFORE, Gamevice respectfully requests:

A.    That Judgment be entered that Nintendo Japan and NOA have infringed the '498 and '713 patents, directly and indirectly, literally or under the doctrine of equivalents;

B.    That, in accordance with 35 U.S.C. § 283, Nintendo Japan and NOA and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from (1) infringing the '498 and '713 patents, and (2) making, using, selling, and offering for sale the Nintendo Switch and infringing components thereof;

C.    An award of damages sufficient to compensate Gamevice for Defendants' infringement under 35 U.S.C. § 284;

D.    That the case be found exceptional under 35 U.S.C. § 285 and that Gamevice be awarded its attorneys' fees;

E.    Costs and expenses in this action;

F.    An award of prejudgment and post-judgment interest; and

07714-00002/9936686.4    COMPLAINT FOR PATENT INFRINGEMENT

G.    Such other and further relief as the Court may deem just and proper.

DATED:  March 29, 2018                        QUINN EMANUEL URQUHART  &
                                              SULLIVAN, LLP


                                              By /s/ *Chris A. Mathews*
                                              _____
                                                  John B. Quinn
                                                  Chris A. Mathews
                                                  Tigran Guledjian
                                                  Justin C. Griffin


                                                  Attorneys for Plaintiff Gamevice, Inc.

07714-00002/9936686.4                         COMPLAINT FOR PATENT INFRINGEMENT

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Gamevice respectfully demands a trial by jury on all issues triable by jury.

DATED:  March 29, 2018                     QUINN EMANUEL URQUHART  &
                                           SULLIVAN, LLP


                                           By /s/ *Chris A. Mathews*
                                              John B. Quinn
                                              Chris A. Mathews
                                              Tigran Guledjian
                                              Justin C. Griffin


                                           Attorneys for Plaintiff Gamevice, Inc.

-41-                                                  Case No. 3:18-cv-1942