UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMEVICE, INC., <br>     Plaintiff, <br> v. <br> NINTENDO CO., LTD., et al., <br>     Defendants. | Case No. 18-cv-01942-RS (TSH) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART GAMEVICE'S MOTIONS TO COMPEL** <br><br> Re: Dkt. Nos. 66, 67 |

Plaintiff and Counterclaim Defendant Gamevice, Inc. ("Gamevice") and Defendant and Counterclaimant Nintendo of America, Inc. ("Nintendo") have filed two joint discovery letter briefs. ECF Nos. 66, 67. The Court held a telephonic hearing on June 27, 2019 and now issues this order.

**A.     ECF No. 66**

    **1.     Gamevice's Interrogatory No. 1**

This interrogatory states: "Further to Your disclosure pursuant to Patent Local Rule 3-1(g), provide a claim chart for: (a) the Gameboy Micro, Identifying any and all features and elements of the Gameboy Micro that You contend are covered by each limitation and feature found in claims 1, 4, 8, and 11 of the '165 patent; (b) all prototypes and/or mock-ups of the 'Wii U zapper' that You contend 'generally correspond with Figs. 15-20 of the '514 patent,' Identifying any and all features and elements of such prototypes and/or mock-ups that You contend are covered by each limitation and feature found in one or more asserted claims of the '514 Patent; and (c) any other product, prototype and/or mock-up developed, made, and/or sold by You, if any, that You contend are covered by each limitation and feature found in one or more claims of the Counterclaim Patents."

Gamevice argues that given its understanding of how Nintendo is reading its claims, it appears that the Wii U Gamepad (without the Wii U zapper mock-up), Nintendo 3DS and Nintendo Switch practice claim 10 of the '514 patent. In the joint letter brief, Nintendo clearly states that Nintendo does *not* contend that the Nintendo 3DS or the Nintendo Switch practice any of the asserted patents. That's a perfectly acceptable response. Interrogatory 1 is, after all, a contention interrogatory that asks Nintendo what it contends. And Nintendo gets to decide what it contends. If Nintendo does not contend that the Nintendo 3DS and Nintendo Switch practice the patents, then information about them is not responsive to this interrogatory and nothing is missing.

With respect to the Wii U Gamepad, however, Nintendo's response is too cagey. Nintendo does not state one way or the other whether it contends that the Wii U Gamepad practices any of these patents. Nintendo adds that "the parties have a claim-construction dispute over critical limitations that will determine whether or not Nintendo 'contends' that product practices any of the asserted patents."

At the hearing, Nintendo clarified its position. Under Nintendo's own view of what its claims mean, it does believe that the Wii U Gamepad practices the '514 patent. But Nintendo views that more as an *acknowledgment* or an *admission*, not really a *contention* that it is making to advance its case. However, Nintendo is interpreting the word "contend" with overly formalistic literalness. Gamevice's interrogatory is asking Nintendo to apply law to fact, and asking Nintendo what it contends is just another way of asking Nintendo what it thinks or believes. The interrogatory is not limited to asking Nintendo only for information that Nintendo thinks is helpful to its case, leaving out information that Nintendo grudgingly admits is true. It is asking for both. Because Nintendo does contend – in this broader sense of the word "contend" – that the Wii U Gamepad practices the '514 patent, the Court **ORDERS** Nintendo to amend its response to this interrogatory to include the responsive information. The Court acknowledges that Judge Seeborg's upcoming claim construction ruling might cause Nintendo to *change* its views on which of its products practice which patents, but that does not relieve Nintendo of the obligation to answer this interrogatory in the meantime.

### 2. Gamevice's Interrogatory No. 4

In this interrogatory, Gamevice asks: "Separately for each claim of the Counterclaim Patents that NOA contends Gamevice has infringed or is infringing, Identify and Describe in detail all facts and circumstances relating to the earliest making, using, selling, offering for sale, or disclosure of the alleged inventions recited in such asserted claim, including without limitation the first manufacture of the claimed invention, the first use of the claimed invention in the United States, the first public use of the claimed invention in the United States, the first offer for sale of the claimed invention in the United States, the sale of the claimed invention in the United States, the first public disclosure of the claimed invention, and the first disclosure of the claimed invention by a Named Inventor to any other Person. Your response to this Interrogatory should include without limitation the Date on which each such event occurred, the location where each such event occurred, the identity of each Person with knowledge of any of the foregoing, the price of any such offers for sale or sales, and the identities of all Documents (by Bates numbers) relating to any of the foregoing." Nintendo's response contains objections, five sentences of narrative that provide some of the requested information, and a Rule 33(d) reference to documents. The referenced documents were produced by Nintendo Co., Ltd., Nintendo's Japanese parent company ("Nintendo Japan"). There are more than 400 pages of them, and more than 300 of the pages are in Japanese. The issue the parties raise is what to do with a Rule 33(d) reference to documents in a foreign language.

Rule 33(d) allows a reference to documents "if the burden of deriving or ascertaining the answer will be substantially the same for either party," and the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). There is not much case law on this specific foreign language issue, but the few courts that have addressed it have easily concluded that a Rule 33(d) reference to foreign language documents does not satisfy the requirements of the Rule. *See, e.g., Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, 2009 WL 2022308, at *4-5 (E.D. Mich. July 8, 2009). The burden of deriving or ascertaining the answer is not the same for Gamevice and Nintendo. Nintendo has its parent company to help it derive the

answer from the Japanese language documents, and indeed the parent company was the source of them, whereas Gamevice states it is not able to read them.

There is another issue, though. This interrogatory is, for the most part, asking for the application of law to fact. Some of what it asks, such as questions about facts and circumstances, prices, locations and identities of people, is factual. But the primary thrust of this interrogatory is about the earliest dates of sale, offer for sale and disclosure on a claim-by-claim basis. This is better known as a contention interrogatory. There is no way Gamevice can look through a stack of documents and discover Nintendo's contentions. Nintendo has to make them.

To remedy the foreign language problem, courts have come up with two solutions. One, of course, is to order the documents translated. *See Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 274 F.R.D. 437, 441 (E.D.N.Y. 2011) (ordering translation and ordering the parties to split the cost); *E&J Gallo Winery v. Cantine Rallo, S.p.A.*, 2006 WL 3251830, at *5 (E.D. Cal. Nov. 8, 2006) (same, but capping the fraction of the cost borne by the party that served the interrogatory). But another option is to say that the Rule 33(d) reference simply failed – the burden of ascertaining the answer somewhere in the documents is not the same for both sides – so the responding party must answer the interrogatory in the regular narrative fashion. The Court did that in *Sungjin*, 2009 WL 2022038, at *4-5, where the problem was more than just the foreign language. It was also that the plaintiff simply knew more about its own documents. Even if they were all translated into English, it was too hard for the defendant to figure out which documents related to which subparts of the interrogatories.

The Court faces an analogous situation here. Even if the documents were all translated into English, how could Gamevice determine from them, for example, whether claim 7 in the '806 patent had a different date of first sale from claim 18? That is a legal position, not a factual question. Because of the twin problems that the documents are mostly in Japanese and that this interrogatory seeks the application of law to fact, the Court finds that Nintendo's Rule 33(d) reference fails. Accordingly, the Court **ORDERS** Nintendo to provide a narrative answer to

4

interrogatory 4 without relying on a Rule 33(d) reference.[1]

### 3. Gamevice's Interrogatory No. 13

This interrogatory requests: "For each prototype, or mock-up that You provide a claim chart for in response to Interrogatory No. 1, Describe its design, development, and marketing; Identify all Persons involved in its design, development or marketing; Identify all conferences, trade shows, industry groups or meetings, government events, or any gatherings attended by You to promote it; Identify the revenues generated by or attributable to it, in whole or in part; and Describe Your attempts to mark it with the numbers of any of the Counterclaim Patents." Nintendo's response is the same as to interrogatory 4. That is, it has a few responsive sentences, then does a Rule 33(d) reference to the same body of documents, most of which are in Japanese.

Because these documents are mostly in Japanese, this Rule 33(d) reference is defective for the same foreign language reasons discussed above in connection with interrogatory 4. However, this Rule 33(d) reference does not have the additional problem of telling Gamevice to try to guess what Nintendo's contentions are because this interrogatory is not asking for the application of law to fact. If the Japanese language documents were translated into English, and if they contain the relevant information, it is probably just as easy for Gamevice to ascertain the answer as it is for Nintendo. Accordingly, the Court **ORDERS** that Nintendo either (1) amend its response so that it is a narrative without relying on a Rule 33(d) reference, or (2) translate the Japanese language documents into English and produce the translations. If Nintendo does the latter, the parties shall split the cost of the translation except that Gamevice's share shall not exceed $5,000. *See E&J Gallo*, 2006 WL 3251830, at *5 (ordering split of translation costs for documents in a Rule 33(d) response but capping the interrogating party's share of the expense).

### B. ECF No. 67

#### 1. Gamevice's Interrogatory No. 2

This interrogatory asks Nintendo to "[i]dentify all licenses and agreements relating to the

---

[1] The only issue teed up for the Court's decision with respect to this interrogatory is the Rule 33(d) reference. This is a broadly written interrogatory, and the Court has not ruled on Nintendo's overbreadth objection.

5

Counterclaim Patents, including without limitation portfolio licenses, covenants not to sue, indemnity agreements, and other agreements relating to intellectual property rights; Describe the terms of each such license or agreement, including without limitation the parties thereto, the duration thereof, the intellectual property rights covered thereunder, and the consideration provided in return for such intellectual property rights; and Identify any Documents (by Bates number) constituting or relating to each such license or agreement." Nintendo's response is to refer to a number of documents pursuant to Federal Rule of Civil Procedure 33(d). One of them is an October 13, 2017 assignment by Nintendo Japan to Nintendo of all right, title and interest in the patents. The assignment states that is was made "for good and valuable consideration, the receipt and sufficien[cy] of which is hereby acknowledged," but it does not state what that consideration was, and Gamevice moves to compel that information.

This information is unquestionably responsive to Gamevice's interrogatory. The consideration that Nintendo paid for the patents is relevant to damages, and if for some reason the consideration were inadequate or defective, Gamevice might be able to challenge Nintendo's ability to sue at all. At the telephonic hearing, however, it became clear that this dispute is less than meets the eye. Nintendo says that the consideration it paid is in the assignment agreement. In other words, Nintendo says that it and Nintendo Japan gave things to each other in the assignment agreement, and there was no other consideration. If that is true, then the Rule 33(d) reference in the interrogatory response means that the response did not completely answer the interrogatory because Nintendo should also have said that there was no consideration paid for the patents other than what is stated in the assignment agreement. Accordingly, the Court **ORDERS** Nintendo to answer this interrogatory, including to state whether or not there was any consideration paid for the patents beyond what is stated in the referenced assignment agreement.

**2.     Gamevice's Interrogatory No. 3**

This interrogatory asks Nintendo to: "Describe in detail all facts relevant to the conception and reduction to practice of each claim of the Counterclaim Patents that NOA contends Gamevice has infringed or is infringing. Your response to the Interrogatory should include without limitation the Date of conception; the name of each Person who contributed to the conception and

6

the specific contribution made by each such Person to the claimed invention; how these Persons arrived at their claimed invention; the identities of all Persons with knowledge of the conception; the Date of the first reduction to practice; the name of each Person who contributed to such reduction to practice and the nature of each such Person's contribution; all facts and circumstances relating to any alleged diligence between the asserted Dates of conception and first reduction to practice; the identities of all Persons with knowledge of such diligence; the nature of each such Person's participation in, involvement in, and contribution to the alleged diligence toward reduction to practice; and the identities of all Documents (by Bates number) relating to such conception, reduction to practice, or diligence."

Gamevice now moves to compel Nintendo to identify the name of each person who contributed to the conception and reduction to practice of each alleged claim, the nature of the contribution made by that person to each specific claim, and the identities of all persons with knowledge of the conception and reduction to practice of each asserted claim. Gamevice states that it wants to explore the alleged inventorship of each claimed invention and that there are unanswered questions at least concerning the '806 patent. Nintendo responds that providing this information would be a burdensome fishing expedition into irrelevant details. It states there are a total of 20 inventors listed on the patents at issue, who all live in Japan, and that tracking them down and interviewing them in detail about their contributions on a claim by claim basis for all 35 claims would be a significant and unjustified amount of work.

The Court has significant concerns with the breadth of this interrogatory. Judge Seeborg's Case Management Scheduling Order states that each side may have 35 interrogatories, including all discrete subparts. ECF No. 42. Depending on how subparts are counted, this interrogatory could easily be all 35, which means it actually exceeds the limit of 35 because it comes after interrogatories 1 and 2, which are not lacking in subparts either.

Nonetheless, as Gamevice is moving to compel only as to some of the information requested, and Nintendo's opposition does not stand on the interrogatory limit, the Court evaluates this motion to determine whether the requested information is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Let's break the current request into two parts. The

first is Gamevice's request that Nintendo identify the name of each person who contributed to the conception and reduction to practice of each alleged claim, and the nature of the contribution made by that person to each specific claim. At the hearing, Gamevice clarified that it wants this information for all three patents. More importantly, it also clarified why it wants this information. There are 20 listed inventors for the three patents, and Gamevice wants to know whom to depose. Some claims are more important in this case than others, but Gamevice does not know which inventors contributed to which claims. The patents just list all of the inventors for the patent, leaving Gamevice in the dark. Also, even for undeposed witnesses, Gamevice wants this information for trial preparation, so it can prepare for cross-examination. These are legitimate objects of fact discovery.

Nintendo responds that providing this information is burdensome. It notes that there are 20 listed inventors, and they all live in Japan. Nintendo would have to interview them about their specific contributions to each claim in order to provide the requested information. Also, some of them might not be employees of Nintendo Japan anymore, so it might be difficult or impossible to track them down, or they might not want to talk.

As to potential former employees who might be hard to find or might be uncooperative, Nintendo has a fair point. The Court's order obligates Nintendo to make a reasonable effort to find these inventors to interview them. However, if any of them are former employees, and if after reasonable efforts Nintendo cannot find them, or they decline to talk, then Nintendo has exhausted its discovery obligations as to these witnesses.

But for any of the inventors who are still Nintendo Japan employees, or who are no longer employees but who can be tracked down and are willing to talk, it is proportional to require Nintendo to interview them to provide the requested information. In its initial disclosures, Nintendo listed all 20 of these inventors as witnesses "likely to have discoverable information that NOA may use to support its claims against Gamevice . . ." ECF No. 79. Indeed, only nine of the witnesses listed in Nintendo's initial disclosures are not the inventors, meaning that slightly more than two-thirds of Nintendo's disclosed witnesses are the inventors. Having put Gamevice on notice that these witnesses have discoverable information *and* that they are *most* of the witnesses

in support of Nintendo's claims, requiring Nintendo to actually talk to these people and disclose to Gamevice their contributions with respect to each claim is eminently reasonable. Also, Nintendo is presumably intending to talk with at least several of these inventors before trial to determine whether to call them as trial witnesses. So, the issue is less about *whether* Nintendo will have to incur this burden and more about when.

Let's move to the next issue. In the letter brief, Gamevice stated that it wants the identities of all persons with knowledge of the conception and reduction to practice of each asserted claim. At the hearing, however, Gamevice clarified that this request relates only to the '165 patent for which Nintendo is claiming a conception date that is different from the claimed priority date in the Japanese patent. In response to the Court's question about burden, Nintendo stated that there are only two such people (the inventors), so there is no burden to producing this relevant information.

Accordingly, the Court **ORDERS** Nintendo to identify the name of each person who contributed to the conception and reduction to practice of each alleged claim, and the nature of the contribution made by that person to each specific claim, and – for the '165 patent only – the identities of all persons with knowledge of the conception and reduction to practice of each asserted claim.

### 3. Gamevice's Interrogatory No. 10

This interrogatory asks Nintendo to "Separately for each Asserted Claim, Describe any secondary considerations or objective evidence of non-obviousness (e.g., commercial success, long-felt need, expressions of skepticism or disbelief, copying, etc.) that You contend support the purported non-obviousness of such claim, for each such alleged secondary consideration Describe in detail the facts underlying the alleged secondary consideration, and Identify each Document (by Bates number) supporting such contention and each Person with knowledge of the facts relating to that contention."

The parties seem to agree that this interrogatory is relevant and proportional. The Court thinks it is too. Although obviousness is an affirmative defense that Gamevice has the burden to prove, it is certainly entitled to take discovery into Nintendo's contentions about the merits of that defense. Instead, two issues divide the parties. The first is whether Nintendo has answered this

interrogatory. Gamevice says Nintendo has not answered adequately, whereas Nintendo says that it has. The attachment to the joint letter brief states that Nintendo's most recent response is dated March 22, 2019. It makes some objections, has a brief narrative paragraph, and then states: "Pursuant to Fed. R. Civ. P. 33(d), NOA has produced and/or will produce additional documentary evidence regarding secondary considerations of non-obviousness with respect to the Counterclaim Patents."

That response is inadequate. A Rule 33(d) reference must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Nintendo's current response effectively says, "Go look through our document production and maybe you'll find something." That does not comply with the Rule. The Court **ORDERS** Nintendo to amend its response to interrogatory 10 to identify the referenced documents by Bates number.

The second issue that divides the parties is whether Nintendo's experts can rely on documents not listed in Nintendo's response to interrogatory 10. The Court expresses no view on that issue. It isn't ripe. Also, depending on how that issue gets raised (e.g., if it is part of a Daubert motion), it might not be for the undersigned to decide.

**IT IS SO ORDERED.**

Dated: July 2, 2019

THOMAS S. HIXSON
United States Magistrate Judge