United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAMEVICE, INC.,
    Plaintiff,
v.
NINTENDO CO., LTD., et al.,
    Defendants.

Case No. 18-cv-01942-RS (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 86

Nintendo and Gamevice have submitted a joint discovery letter brief in which Nintendo moves to compel regarding its requests for admission ("RFAs") Nos. 1-24 and interrogatories Nos. 13-15. ECF No. 86. The Court held a telephonic hearing, and this order follows.

**A.    RFAs**

Gamevice's responses to the RFAs consist solely of objections, so the only question before the Court is whether the RFAs should be answered. Each RFA asks for an admission concerning a very specific subject, and the requested admission concerns multiple devices. For example, RFA 11 asks Gamevice to "[a]dmit that each of the Gamevice Accessories is a gaming device." If Gamevice thinks that some of its accessories are gaming devices and others are not, its answer would presumably be an admission as to some and a denial as to others. Similarly, RFA 10 asks Gamevice to "[a]dmit that the iPhone 6 Plus and iPhone 7 Plus each have a display section with a screen 5 inches or larger." If there is really a dispute about how big an iPhone Plus screen size is, and if Gamevice really thinks the answer differs for the 6 or the 7, then this RFA might require a partial admission or denial.

Some of the RFAs are more complicated, even though they follow the same structure. Gamevice highlights RFA 5 as an example. It asks Gamevice to "[a]dmit that the keytop of each

of the 'shoulder buttons' and 'trigger buttons' on the GV157, GV157A, GV167, GV169, and GV189 rotates about a point provided at a position at an end of the keytop further from the horizontal center of the device." It asks Gamevice to admit that five of its devices have this feature in common.

Gamevice's first objection to these RFAs is that they are compound and violate Judge Seeborg's order that each side is limited to 45 RFAs (other than for authentication purposes). *See* ECF No. 42. Gamevice's theory is that if you ask someone to admit something about multiple things, then you've asked a number of RFAs equal to the number of things. For example, if you ask someone to admit that his computers are password-protected, and he owns five computers, that would be five RFAs. Or if you ask Toyota to admit that every car it sold last year had four wheels, you've asked 9.6 million RFAs.

The Court disagrees. Asking whether a group of things all have the same characteristic is a question about similarity. It's true that the question requires an answer as to each thing, but the essence of the question is whether there is a point of commonality among the things. This is a good use of RFAs, which are designed to remove issues from contention if they are not really in dispute. *See Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial."). For example, RFA 18 asks Gamevice to "[a]dmit that each of GV140, GV141, GV150, GV156, GV157, GV160, GV161, have not been certified under Apple's MFi program." Presumably, Gamevice knows which of its devices have been certified under Apple's MFi program, and in one swoop this RFA seeks to determine if certification is a contested issue in this lawsuit. A response to this RFA just tells Nintendo whether or not there is a fight about that point. All of these RFAs have this quality that an admission would simply remove issues from dispute.

These RFAs are consistent with Rule 36, which states that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. Proc. 36(a)(4). This rule contemplates that the "matter" that is the subject of the RFA may have "part[s]" to it, which is inconsistent with

2

Gamevice's argument that an RFA can only ask one specific question about one specific item. *See Pecover v. Electronic Arts, Inc.*, 2012 WL 12921363, *4 (N.D. Cal. Mar. 23, 2012) ("plaintiffs' objection that the requests are 'compound' is unpersuasive, because Rule 36 allows responding parties to 'qualify an answer or deny only a part of a matter' as long as the answer specifies the part admitted and qualifies or denies the rest"). As the Ninth Circuit has explained, responding parties "should admit to the fullest extent possible, and explain in detail why *other portions* of a request may not be admitted." *Marchland v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994) (emphasis added).

There are some cases stating that RFAs should not ask compound questions. *See, e.g., U.S. ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("Requests for admissions may not contain compound, conjunctive, or disjunctive (e.g., 'and/or') statements."); *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 2009 WL 9530359 (S.D. Cal. Sept. 23, 2009) ("Requests for Admissions are required to be simple and direct, and should be limited to singular relevant facts") (citation and quotation marks omitted). Further, where the Court has set a limit on RFAs, as is the case here, that limit must be enforced.

Here, Nintendo's RFAs do not flout Judge Seeborg's limit on their number. Each RFA asks for an admission on a narrow, specific subject. The fact that they seek admissions as to multiple products does not render them compound. A litigant can ask an opponent to "admit the eggs you sold me were rotten," and that's one RFA, not a dozen. The RFAs do not group unrelated subjects together or ask for multiple pieces of information in a way that would suggest an attempt to get around the limit of 45.

Next, Gamevice argues that the RFAs are vague and ambiguous because they use technical language. However, in this patent infringement case about technology, that objection is impossible to take seriously. The parties of course understand technical terms. Some of the terms come straight out of the asserted patents, and Gamevice can answer the RFAs based on its understanding of what the patent terms mean. Others, such as "Apple's MFi program," have meanings that are obvious to these sophisticated litigants, even if the average person on the street might find them unclear.

3

1    The Court **GRANTS** Nintendo's motion to compel responses to the RFAs and **ORDERS**
Gamevice to answer them within 30 days.

## B.     Interrogatories 13-15

Interrogatory 13 asks Gamevice: to the extent it contends that differences between its iOS compatible products are material to the question of infringement of any Nintendo patent, what are those differences and how are they material?  Interrogatory 14 asks the same about the Android compatible products.  Interrogatory 15 asks the same question about differences between the iOS and Android compatible products.  Gamevice asserted a number of objections to each interrogatory.  It then purported to answer each interrogatory ("Subject to and without waiving any of their general and specific objections, Gamevice responds as follows…"), but what followed was just another paragraph arguing that the interrogatory was improper.

The relevance of these interrogatories is clear.  Nintendo is trying to establish that the differences between the accused products are not material to whether they infringe Nintendo's patents.  To use a non-patent analogy, imagine a book seller who sells bootleg copies of Harry Potter novels without a license to do so – some of the copies are in large print, some in paperback, others are for digital reading devices, and so on.  An analogous interrogatory would ask the book seller to confirm that the different formats of the books are not material to whether they infringe.  That's what Nintendo is trying to get at here.

Gamevice argues that these interrogatories violate Judge Seeborg's order that each side may have 35 interrogatories "including all discrete subparts."  ECF No. 42.  Gamevice argues that these interrogatories contain numerous discrete subparts because they seek information about multiple different products and about multiple different patents.

The Court disagrees. It is true that an interrogatory that asks for information about each accused device can impliedly amount to more than one interrogatory, depending on the question asked. *See, e.g., Rambus Inc. v. NVIDIA Corp.*, 2011 WL 11746749, *14 (N.D. Cal. Aug. 24, 2011); *Collaboration Properties, Inc. v. Polycom, Inc*., 224 F.R.D. 473, 475 (N.D. Cal. Oct. 13, 2004). But these interrogatories aren't like that.  They are asking a foundational question that has the potential to greatly simplify this case: "Do you contend that the differences between these

products actually matter?" The desired answer isn't pages and pages of responses but four words: "We don't contend that." And if that isn't the answer – if Gamevice thinks the infringement analysis really does differ by particular product – it is obligated to disclose that in discovery. Each of these interrogatories isn't asking Gamevice lots of questions with discrete subparts. It's asking one question, an important question that Gamevice should answer.

Gamevice next argues that these interrogatories are unduly burdensome and an attempt to shift the burden of proof regarding a representative approach to infringement. As to the latter point, the fact that Nintendo will have the burden of proof at trial to show that Gamevice infringed its patents just has nothing to do with discovery. Nintendo does not have to prove its case to be entitled to take discovery – that gets litigation backwards. Nintendo can ask in discovery if Gamevice contends that any differences in its products matter for infringement purposes, and requiring Gamevice to answer does not shift the burden of proof.

As to burden, Gamevice's response to interrogatory 8 – which asks for each asserted claim in Nintendo's patents Gamevice's contentions concerning why it does not infringe – suggests there isn't much burden. Most of Gamevice's answer to interrogatory 8 refers to "Gamevice's accused products" together, without differentiating between them. Sometimes the answer does refer to specific products, but when it does so it identifies features of those products and states why they mean the product does not infringe. Gamevice's response to interrogatory 8 therefore implies that its responses to interrogatories 13-15 will in large part state that Gamevice does not contend that differences in the products are material to infringement, but in some instances it will say that some differences matter. Frankly, the information requested by interrogatories 13-15 is entirely subsumed by interrogatory 8, which Gamevice claims it has already answered, so the Court is unable to see the additional burden in answering these interrogatories. After all, if Gamevice contends that differences in its products are material to the question of infringement, then it should have mentioned those differences when it set forth its noninfringement contentions in response to interrogatory 8 (and, as noted, sometimes it did). Accordingly, Gamevice's burden argument lacks merit.

The Court **GRANTS** Nintendo's motion to compel responses to these interrogatories and

5

**ORDERS** Gamevice to answer them within 30 days.

**IT IS SO ORDERED.**

Dated: August 23, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge