UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAMEVICE, INC.,

          Plaintiff,

    v.

NINTENDO CO., LTD., et al.,

          Defendants.

Case No.  18-cv-01942-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY**

## I.  INTRODUCTION

Plaintiff and counter-defendant Gamevice, Inc. ("Gamevice") is a designer and manufacturer of attachable handheld controllers for use with mobile phones and tablets. Defendant and counter-claimant Nintendo of America, Inc. ("Nintendo") similarly develops gaming technology, including video game controllers and consoles. In March 2018, Gamevice sued Nintendo for alleged infringement of two of Gamevice's patents. In response, Nintendo counterclaimed, alleging Gamevice infringed three of its own patents.

Specifically, Nintendo accuses Gamevice of selling accessories for smart phones and tablets that infringe U.S. Patent Nos. 7,193,165 ("'165 Patent"), 8,702,514 ("'514 Patent"), and, 9,700,806 ("'806 Patent"). The '165 Patent claims, *inter alia*, a shoulder button for a game controller. The '514 Patent claims a combination of a game controller and attachable display device. Finally, the '806 Patent claims a game controller that connects to a separate "electronic device" and provides additional controls for that device.

Gamevice now moves for summary judgment that it does not infringe Nintendo's patents, or alternatively that the patents are invalid. Both parties also move to exclude the testimony of one of the other's experts. Pursuant to Civil Local Rule 7-1(b) and the court's prior order, ECF No. 147, the motions will be decided without oral argument. For the reasons set forth below, Gamevice's motion for summary judgment is granted in part and denied in part, Nintendo's motion to exclude expert testimony is denied, and Gamevice's motion to exclude expert testimony is granted.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is therefore proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. In contrast, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Only disputes over material facts matter. "Factual disputes that are

irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Id.* at 255. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

### B. Discussion

As a threshold matter, Nintendo accuses Gamevice of attempting to raise arguments that it waived by not raising them at claim construction. Nintendo is correct that terms not construed at claim construction should be given their plain and ordinary meaning at summary judgment and trial, and "that it can be error to engage in hypertechnical refinements of the meaning of claims following claim construction to support a grant of summary judgment." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014) (citing *AFG Industries, Inc. v. Cardinal IG Co.,* 375 F.3d 1367 (Fed. Cir. 2004)). The Northern District's Local Rules set out a claim construction process by which parties are required to prioritize the number of terms they request the court construe. "The local rules and this Court did not set out a particular process for resolving claim construction disputes only to let the parties make additional arguments at the summary judgment phase untethered to those carefully structured rules." *Id.*

That said, while claim construction must not be reopened, the present disputes will be considered "as 'part of the infringement analysis, not part of the claim construction.'" *Id.* (quoting *Thorner v. Sony Computer Entertainment Am., LLC,* 669 F.3d 1362, 1369 (Fed. Cir. 2012)). "[T]he Court will view the parties' disputes through the lens of [what] a reasonable jury, armed with the Court's claim construction as to certain terms and an instruction that the plain and ordinary meaning controls as to others," *id.* at *5, could conclude.

#### 1. '165 Patent

Gamevice seeks summary judgment that it does not infringe upon Claims 1 and 8 of the

United States District Court
Northern District of California

'165 Patent, or alternatively that the claims are invalid as anticipated by the Sega Saturn Controller and for failure to meet the requirements of 35 U.S.C. §§ 112, 101. Claim 1 reads:

> An operation device for game machine, comprising:
> a housing; and
> a pair of operating means placed at symmetrical positions with respect
> to a center of said housing in a horizontal direction on an upper side
> surface of said housing, wherein
> each of said operating means includes
> a keytop,
> a switch portion provided at a position corresponding to one end of
> said keytop nearer to said center,
> a pivot portion provided at an other end of said keytop,
> and an elastic body for elastically pushing said keytop toward a state
> that said switch portion is not actuated, wherein,
> when said keytop is depressed against an elastic force provided by said
> elastic body, said other end of said keytop is rotated about said pivot
> portion to actuate said switch portion.

*See* '165 Patent, ECF No. 19-3, 19:44–62.

The limitations of Claim 8 are identical to the limitations of Claim 1, but the preamble of Claim 8 lists "a hand-held game machine" instead of "an operation device for game machine." *Id.* at 20:22.

### a. Infringement

Patent infringement must be proven by a preponderance of the evidence. *See Siemens Medical Solutions USA, Inc. v. Saint–Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1279 (Fed. Cir. 2011). At summary judgment, the parties' infringement disputes center on whether Gamevice products "literally infringe" upon Nintendo's patents. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016). "As such, it is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Id.*

1      The accused products are gaming controllers which can be attached to smartphones. Each

2   controller is comprised of left and right "control units," which are connected by a "flex-bridge."

3   Each control unit is an "injection-molded plastic shell" which covers or protects several electrical

4   components. The flex-bridge connects the control units and covers or protects an electrical cable

5   connecting them. Each control unit has two buttons: one closer to the user ("L1" and "R1") and

6   one further away ("L2" and "R2").

7      Gamevice first argues the accused products do not meet the "a housing" limitation of

8   Claims 1 and 8 because they are comprised of multiple "housings." In Gamevice's view, each

9   control unit is its own housing. In Nintendo's view, the two control units and flex-bridge together

10  comprise a single housing. At claim construction, Gamevice's proposed construction of

11  "housing"— "a rigid casing that encloses and protects an electrical and/or mechanical

12  mechanism"—was rejected in favor of Nintendo's: "component that covers or protects." At

13  summary judgment, the only additional evidence to which Gamevice points is U.S. Patent No.

14  6,512,511 ("Willner"), which was issued two years prior to the '165 Patent's asserted date. *Cf.*

15  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("[A] court in its

16  discretion may admit and rely on prior art proffered by one of the parties, whether or not cited in

17  the specification or the file history. This prior art can often help to demonstrate how a disputed

18  term is used by those skilled in the art."). Willner refers to two components similar to the control

19  units here as a "pair of housings." Nintendo's expert refers to the two control units together with

20  the flex-bridge as a single housing.

21     Comparing these two pieces of evidence demonstrates a genuine dispute as to whether the

22  control units are separate "housings." On the one hand, Willner demonstrates that in a similar

23  context, left and right control units were viewed as a "pair" of housings by a person skilled in the

24  art ("POSITA"). On the other, as per Nintendo's expert testimony—Gamevice's *Daubert* motion

25  does not attack this expert's testimony—at least one POSITA viewed the control units and flexi-

26  bridge as comprising one housing. Gamevice does not seem to argue the expert's position is

27  unreasonable, only that it is wrong. Thus, a genuine dispute exists.

28

United States District Court
Northern District of California

1    Gamevice's second argument—that its accused products do not consist of "a pair of

2    operating means placed at symmetrical positions…on an upper side surface of said housing"—is

3    similarly unavailing. Given the limitation's disclosure of a "pair" of operating means placed on a

4    single "upper side surface," the limitation is only met if the L1/R1 and L2/R2 buttons are

5    considered to be on the same "surface." They are only on the same surface if they are part of the

6    same housing. As discussed above, conflicting testimony exists as to that question. Thus, it cannot

7    be said as a matter of law that the accused products do not infringe upon the '165 Patent.

8        *b.  Invalidity*

9        Gamevice's first argument as to why Claims 1 and 8 of the '165 Patent are invalid is that

10   they are anticipated by the Saga Saturn Controller. A claim may be invalid as anticipated by prior

11   art. *See* 35 U.S.C. § 102. "To anticipate a claim, a single prior art reference must expressly or

12   inherently disclose each claim limitation." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323,

13   1334 (Fed. Cir. 2008). Anticipation is a question of fact. *See Finnigan Corp. v. Int'l Trade

14   Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999).[1]

15       Genuine disputes of material fact exist as to whether the Saga Saturn Controller discloses

16   every limitation in Claims 1 and 8 of the '165 Patent. For example, both claims recite a keytop

17   with a "switch portion" and a "pivot portion provided at an other end of said keytop." *See* '165

18   Patent at 19:52–54. The final limitation of each claim provides, in relevant part, "said other end of

19   said keytop is rotated about said pivot portion to actuate said switch portion." *See id.* at 19:59–62.

20   The parties agree that whether the Saga Saturn Controller discloses that final limitation depends

21   on which end of keytop—the switch portion or the pivot portion—is the "said other end" in the

22   final limitation. The parties have provided evidence demonstrating a genuine dispute as to this

23   question. The evidence shows a reasonable juror could find "said other end" to be the pivot

24   portion (as says Gamevice) or the switch portion (as says Nintendo) of the keytop. For example,

25   

26   [1] Nintendo contends the Saga Saturn Controller is not prior art because the only testimony as to
that fact is inadmissible. While this threshold objection is noted, as discussed below, Gamevice's

27   anticipation argument does not succeed on its merits regardless.

28

United States District Court
Northern District of California

1    another one of the limitations refers to the "pivot portion" being at "said other end" of the keytop.

2    For "other end" to be used consistently throughout the claim, says Gamevice, it must always refer

3    to the pivot portion.[2] On the other hand, Nintendo provides a declaration by one of its experts[3]

4    demonstrating why the plain and ordinary meaning of "said other end" must be the switch portion,

5    in light of the claims, specification, and extrinsic evidence, else the '165 Patent would not recite

6    any improvement over prior art. There thus exists a genuine dispute as to this material fact.

7         In another example, Nintendo's expert interprets the final limitation to require orbital

8    rotation, as opposed to spinning rotation, about the yaw axis, as opposed to the pitch axis. The

9    parties agree that, if Nintendo's expert is correct, the Saga Saturn Controller does not disclose this

10   final limitation. In fact, says Nintendo's expert, this specific method of rotation is precisely the

11   advancement the '165 Patent made over prior art. Gamevice obviously disagrees and presents

12   conflicting factual evidence via the claims and specification. This conflict demonstrates another

13   genuine dispute as to the same material fact: whether the Saga Saturn Controller embodies the

14   final limitation.

15        Gamevice's three arguments as to why Nintendo's position is incorrect as a matter of law

16   are each unavailing. First, Gamevice accuses Nintendo of presenting waived claim construction

17   arguments via its expert's interpretation of the final limitation. However, Nintendo's arguments

18   are aimed at how a reasonable juror would interpret the limitation, *see Apple v. Samsung*, 2014

19   WL 252045, at *4–5, which is appropriate at summary judgment and in fact precisely what

20   Gamevice does in other places. Second, Gamevice says Nintendo's argument is nonsensical if the

21   "said other end" is the pivot portion—but that is not a given, as discussed above. Third, Gamevice

22   accuses Nintendo of impermissibly importing parts of the specification into the claims—but again,

23   at the summary judgment stage, the question is not whether principles of claim construction are

24

---

25   [2] On this point, Nintendo accuses Gamevice of supplying only attorney argument, and in fact
     making arguments waived at claim construction. However, as Nintendo is not moving for
26   summary judgment, this matter need not be resolved.

27   [3] Unless otherwise noted, neither party moves to exclude the expert opinions discussed.

28

followed, but how a reasonable juror would read the claims, regardless of how that meaning is derived. Thus, genuine disputes of material fact exist as to whether the Saga Saturn Controller encompassed every limitation in these claims. As anticipation is a question of fact, summary judgment is not appropriate.

Finally, Gamevice offers a few sentences as to why Claims 1 and 8 of the '165 Patent are invalid under 35 U.S.C. §§ 101, 112 because they fail to meet the definiteness requirement, the requirement that the claims set forth what the applicant regards as his invention, the enablement requirement, and/or the utility requirement. Each of these arguments, however, is premised on "said other end" in the final limitation referring to the "pivot portion" as a matter of law. As discussed above, a genuine dispute exists as to whether that is the case. For this reason, none of Gamevice's invalidity arguments as to the '165 Patent can prevail at summary judgment.

### 2. '514 Patent

Gamevice seeks summary judgment that it does not infringe upon Claims 1–2 and 7–8 of the '514 Patent, or alternatively that Claims 1, 2, and 8 are invalid as anticipated by prior art. Claim 1 reads:

> A controller system comprising a device and an additional device which is configured to be attachable to and detachable from the device, wherein:
> The device comprises:
> A generally plate-shaped housing; and
> A display section provided on a front side of the housing;
> And the additional device comprises:
> An operation section;
> A bar-shaped first grip portion; and
> A support portion configured to detachably support the device so that a screen of the display section is in a generally vertical direction when the first grip portion is in a vertical direction.

*See* '514 Patent, ECF No. 19-2, at 66:42–55.

Claim 2 depends on Claim 1 and further comprises "a bar-shaped second grip portion which is in a direction generally parallel to the first grip potion, wherein the operation section is operable with a finger of a hand holding one of the first group portion and the second grip portion." *Id.* at 66:56–62. Claim 7 depends on Claim 1 and specifies "the device further comprises

United States District Court
Northern District of California

1  an inertia sensor disposed inside the housing." *Id.* at 67:21–23. Claim 8 depends on Claim 1 and

2  specifies "the screen of the display section is 5 inches or larger." *Id.* at 67:24–25.

3      *a. Infringement*

4      At claim construction, "bar-shaped first grip potion" and "bar-shaped second grip portion"

5  were construed as "pillar-like portion[s] capable of being held." Nintendo argued no construction

6  of the terms was necessary, but as Nintendo acted as its own lexicographer, Gamevice's proposed

7  construction was thus adopted. Gamevice contends its accused products do not meet this "pillar-

8  like" construction, either literally or under the doctrine of equivalents. Either form of infringement

9  is a question of fact. *Akzo*, 811 F.3d at 1339.

10      Whether the accused products literally embody a "pillar-like portion capable of being held"

11  is a disputed factual issue. Nintendo proffers an expert opinion that the limitation is embodied by

12  the accused products. Gamevice makes the conclusory statement that this expert opinion

13  "accus[es] grip-shapes that no reasonable jury could conclude are 'pillar-like,'" *see* Gamevice

14  Reply in Support of Combined Motion, ECF No. 170, at 8, but it does not offer any support for

15  drawing this conclusion as a matter of law. In fact, it concedes that whether the accused products

16  have "pillar-like" grips is "readily observable and not technical in nature," i.e., a factual issue. As

17  this issue is disputed, it must be left to a factfinder.

18      Whether the accused products embody the limitation under the doctrine of equivalents is

19  again a disputed factual issue. Under the doctrine of equivalents, "a product or process that does

20  not literally infringe...the express terms of a patent claim may nonetheless be found to infringe if

21  there is 'equivalence' between the elements of the accused product or process and the claimed

22  elements of the patented invention." *Werner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S.

23  17, 21 (1997). "[A]n element in the accused product is equivalent to a claim limitation if it

24  performs substantially the same *function* in substantially the same *way* to obtain substantially the

25  same *result*." *Voda v. Cordis Corp.,* 536 F.3d 1311, 1326 (Fed. Cir. 2008) (emphases added). The

26  inquiry is a factual one, and summary judgment can thus only be granted if no reasonable

27  factfinder could find equivalence. *Werner–Jenkinson,* 520 U.S. at 38–39.

28

United States District Court
Northern District of California

1    Nintendo's expert applied the function-way-result test to the accused products and

2    determined the '514 Patent is infringed under the doctrine. Gamevice does not attempt to apply the

3    test itself, or offer any expert who does so, but rather argues that accepting the Nintendo expert's

4    application would vitiate the "pillar-like" construction. Vitiation is "a legal determination that 'the

5    evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere &*

6    *Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Werner-Jenkinson*, 520

7    U.S. at 39 n.8).

8    What Gamevice offers, however, is not a legal determination but a factual one. Gamevice's

9    argument seems to be premised on the fact that Nintendo's construction of "bar-shaped" was

10    rejected at claim construction on the grounds that Nintendo acted as its own lexicographer and

11    narrowly defined the term as "pillar-like." Nintendo should not, says Gamevice, now be permitted

12    to recapture territory it lost at claim construction. However, Nintendo is not arguing that the

13    accused products have something equivalent to "bar-shaped" grip portions under its prior

14    proffered construction of the term. Rather, its expert testified that the "vertical, elongated grip

15    portion[s]," Gamevice Dispositive and *Daubert* Motion, ECF No. 151, at 42 ("Gamevice

16    Motion"), of the accused products are indeed equivalent to "pillar-like" grips. This is another

17    factual dispute, not appropriate for summary judgment. Thus, it cannot be said as a matter of law

18    that the accused products do not infringe upon the '514 Patent.

19    ***b. Invalidity***

20    Gamevice argues Claims 1 and 2 of the '514 Patent are invalid as anticipated by U.S.

21    Patent Publication No. 2008/0076559 ("Richardson"), and Claims 1, 2, and 8 are invalid as

22    anticipated by Willner. Richardson claimed a "Detachable Controller for [a] Handheld Electronic

23    Device." Willner claimed a "Hand Grippable Combined Keyboard and Game Controller System."

24    The only evidence proffered by Nintendo to demonstrate that neither Richardson nor

25    Willner discloses a "generally plate-shaped housing," one of the limitations of each claim, is a

26    rebuttal expert report. Gamevice argues the report should be stricken given Nintendo's alleged

27    discovery misconduct. In particular, on November 1, 2018, Gamevice served its Invalidity

28

Contentions, which asserted Claim 1 of the '514 Patent was anticipated by Willner and Richardson. On May 24, 2019, Gamevice served a set of interrogatories, including one which asked Nintendo to "explain all factual and legal bases for each contention by [Nintendo] that" each prior art reference does not anticipate and thus "invalidate the asserted claims." *See* Gamevice Motion at 25. Nintendo objected to the interrogatory as prematurely calling for an expert report, but nevertheless responded substantively. It did not identify any limitations in Claim 1 as missing from Richardson, nor did it identify any limitations in Claims 1 or 2 as missing from Willner. It did reserve its right to argue that Gamevice had not carried its burden of proof as to any specific limitation. Nintendo once supplemented its response to this interrogatory, but it again did not discuss Willner or Richardson. In December 2019, Gamevice served its expert report explaining in detail its invalidity arguments for the first time. In February 2020, Nintendo served its rebuttal expert report substantively contesting Gamevice's invalidity contentions.

Gamevice seeks to exclude the portions of the rebuttal report discussing these substantive contentions under Rules 26 and 37. *See* Fed. R. Civ. P. 26(e)(1) (imposing a continuing duty to "supplement or correct…disclosure[s] or response[s] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties"); Fed R. Civ. P. 37(c)(1) (excluding evidence which was not disclosed as required by Rule 26, "unless the failure was substantially justified or is harmless"). Rule 37 "gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal citation and quotations omitted). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. *See Oracle USA, Inc., et al. v. SAP AG, et al.,* 264 F.R.D. 541, 545 (N.D.Cal.2009).

Nintendo objects that, because Gamevice has the burden of proof as to invalidity, and Nintendo reserved its right to contest Gamevice's invalidity contentions, Rule 37 sanctions do not apply. This objection reflects a split among courts in this district. On the one hand, in *MediaTek*

United States District Court
Northern District of California

*Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341, 2014 WL 2854773 (N.D. Cal. June 20, 2014), the court rejected a request to strike validity theories provided in an expert rebuttal report, but not disclosed in response to an earlier interrogatory, *id.* *4. The court reasoned that, "by propounding [its] interrogatory right on the heels of serving its invalidity contentions, [the accused infringer] was trying to get a preview of what [the patentee's] rebuttal report would say" and engaged in "gamesmanship." *Id.* at *5. On the other hand, in *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012), the court granted a request similar to the one made by Gamevice here, faulting the opposing party for its "failure to disclose its non-infringement theories prior to the rebuttal expert reports," given the duty imposed by Rule 26, *id.* at *5. *See also Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003–04 (N.D. Cal. 2019 (discussing this split and siding with *Apple*).

The present case is more akin to *MediaTek* than to *Apple* and *Asia Vital*, given the burdens of proof. At the time of Nintendo's alleged discovery misconduct, Gamevice had not yet served its expert report detailing its invalidity contentions. Gamevice has the burden of proof on invalidity, so it cannot fault Nintendo for not yet having rebutted an issue about which Gamevice had not yet made its initial showing. *See MediaTek*, 2014 WL 2854773, at *5 ("The Court will not penalize MediaTek for providing its response—its expert rebuttal report—at the time appointed by the Court's scheduling order."). In *Apple* and *Asia Vital*, by contrast, the party accused of failing to update its discovery responses had the burden of proof on the issue—in *Apple*, invalidity; in *Asia Vital*, non-infringement—about which it was accused of failing to update its theories. As in *MediaTek*, Nintendo was substantially justified in not rebutting an argument Gamevice had not yet made, and sanctions are not appropriate. Furthermore, Gamevice's one-line request to assert a new obviousness contention is denied for the same reasons.

As to the substance of Gamevice's invalidity contentions, the parties agree Willner discloses all limitations in Claims 1, 2, and 8 of the '514 Patent, except perhaps "generally plate-shaped housing," which appears in each claim, and "wherein the screen of the display is 5 inches or larger," which appears in Claim 8 only. The parties agree Richardson discloses all limitations in

1    Claims 1 and 2 of the '514 Patent, with the possible exception of "generally plate-shaped

2    housing," which appears in both claims, and "bar-shaped second grip portion," which appears in

3    Claim 2 only. At claim construction, "generally plate-shaped housing" was construed as

4    "horizontally-elongated flat rectangular shape." Gamevice's proposal to construe the term as

5    "tablet-like" was rejected, making clear the "generally plate-shaped housing" need not be the same

6    size as a tablet.

7        There exists a genuine factual dispute as to whether Willner discloses a "generally plate-

8    shaped housing." Willner recites a "palm/tablet-sized computing device." Gamevice's and

9    Nintendo's experts offer conflicting opinions as to whether a POSITA at the time of those

10   inventions would have understood a "palm/tablet-size computing device" to have a "horizontally-

11   elongated flat rectangular shape." This dispute must be left to a factfinder to resolve.

12       Gamevice's three arguments to the contrary are unavailing. First, while Gamevice may be

13   correct that Nintendo's expert's reliance on the figures in Willner in his expert report was

14   improper as a matter of law, *Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951,

15   956 (Fed. Cir. 2000), that does not discount his deposition testimony which did not rely on the

16   figures and reaches the same conclusion: Willner does not disclose a "generally plate-shaped

17   housing." Second, while "disclosure of a small genus may anticipate the species of that genus even

18   if the species are not themselves recited," *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246

19   F.3d 1368, 1380 (Fed. Cir. 2001), Gamevice has not presented evidence that *any* tablet device at

20   the time of Willner (2001) was horizontally elongated. In fact, as Nintendo's expert states, the

21   most prominent "tablet" devices at the time—the BlackBerry, Palm Pilot, and iPod—were all

22   vertically oriented. Third, while it is true that at least one district court outside the Ninth Circuit

23   has held differences in dimensions do not preclude anticipation, that single decision does not

24   representing binding authority. There thus exist genuine factual disputes as to whether Willner

25   anticipates the '514 Patent.

26       There also exists a genuine dispute as to whether Richardson discloses a "generally plate-

27   shaped housing." In particular, in light of the construction of this term as "rectangular,"

28

ORDER
CASE NO. 18-cv-01942-RS

13

United States District Court
Northern District of California

1    Nintendo's expert asserts Richardson does not disclose the limitation because Richardson did not

2    have two sets of parallel sides. Gamevice presents evidence—for example, a Wikipedia article—

3    which disputes whether a rectangle must have parallel sides. Again, all Gamevice's evidence

4    demonstrates is the existence of a factual dispute. Gamevice is free to challenge Nintendo's expert

5    at trial as to what constitutes a "rectangle" to the reasonable person using the evidence it presents

6    here, and let the jury decide. Determination as a matter of law, however, is not warranted.

7            Finally, because it cannot be determined as a matter of law that either Willner or

8    Richardson discloses a "generally plate-shaped housing," Gamevice's additional arguments need

9    not be reached. Regardless of whether Willner discloses an invention "wherein the screen of the

10   display is 5 inches or larger," and whether Richardson discloses a "bar-shaped second grip

11   portion," Claims 2 and 8 cannot be anticipated as a matter of law because both claims contain the

12   "generally plate-shaped housing" limitation. For these reasons, none of Gamevice's invalidity

13   arguments as to the '514 Patent can prevail at summary judgment.

14           **3.   '806 Patent**

15           Gamevice seeks summary judgment that it does not infringe upon Claims 1–17 and 19–24

16   of the '806 Patent, or alternatively that the claims are invalid for failure to satisfy the written

17   description requirement. The '806 Patent discloses a combination of a game controller, which

18   connects to and holds an electronic device. Of the asserted claims, the only independent ones are

19   claims 1, 16, and 20. Each of those claims includes the following limitation: "a support configured

20   to detachably hold at least two sides of the electronic device located on opposite sides of the main

21   surface of the electronic device *such that the main surface of the electronic device is visible to the*

22   *user while the user grasps the gaming device*."[4] *See* '806 Patent, ECF No. 19-1, at 26:1–5, 27:9–

23   18, 28:4–15 (emphasis added).

24           At claim construction, "such that the main surface of the electronic device is visible to the

---

[4] The precise language of the limitation in each claim differs slightly, but the parties agree that, for
purposes of the present dispute, this language taken from Claim 1 is representative.

United States District Court
Northern District of California

1   user while the user grasps the gaming device" and similar phrases were construed as "such that *all*

2   *portions* of the main surface of the electronic device can been seen by the user while the user

3   grasps the gaming device" (emphasis added). Nintendo argued no construction was necessary, or

4   alternatively that the term should be construed "such that an *operative portion* of the main surface

5   of the electronic device is visible to the user" (emphasis added). That is, Nintendo interpreted

6   "main surface" as "operative portion of the main surface." Gamevice advocated for the "all

7   portions" construction, and ultimately prevailed, because other claims specifically refer to a

8   "*portion* of the main surface" in other contexts.

9         The accused products, as described above, consist of gaming "control units" between

10   which an electronic device can be mounted. The parties agree the control units obfuscate some of

11   whichever side of the mounted device faces the user, and thus the entire side is not visible.

12   Therefore, because "main surface" was construed as "*all portions* of the main surface," says

13   Gamevice, the accused products do not infringe the '806 Patent either literally or under the

14   doctrine of equivalents. Nintendo counters that, because the "main surface" is not the entire side of

15   the mounted device facing the user, but rather only its display screen, non-infringement cannot be

16   determined as a matter of law.

17         In light of the court's constructions and the proffered evidence, no reasonable juror could

18   conclude the accused products literally disclose the main surface limitation. In particular, the only

19   evidence Nintendo offers in support of its position is an expert opinion that the "main surface" is

20   only the "display" of the electronic device. However, the same expert states that, for some

21   compatible electronic devices, the display and main surface are co-extensive. In the case of those

22   devices, the control units of the accused products by definition obfuscate some portion, however

23   small, of the display and thus the main surface. Thus, even using the expert's definition of "main

24   surface," the accused products do not necessarily literally infringe upon the '806 Patent.

25   Furthermore, in order to accept the expert's position, a juror would have to reject the court's

26   construction of "main surface" and adopt the expert's definition instead. This is not permitted as a

27   matter of law. Nintendo's new proposal is also nonsensical in light of the '806 Patent

28

United States District Court
Northern District of California

specification, as mounted electronic devices with "displays" are not mentioned or depicted anywhere in the patent.[5] In fact, the figures in the specification each depict mounted devices *without* displays. The types of devices on which Nintendo seems to premise its arguments, such as iPhones, did not even exist at the time of the patents. Therefore, in light of the court's constructions and the evidence, no reasonable juror could conclude the accused products literally disclose the main surface limitation, and summary judgment on this issue is appropriate.

Furthermore, the court's construction also precludes any reasonable conclusion that the accused products disclose the main surface limitation under the doctrine of equivalents. *Augme Techs., Inc. v. Yahoo!, Inc.*, 755 F.3d 1326 (Fed. Cir. 2014) is informative. In that case, the Federal Circuit found the accused products did not disclose a limitation in the patent at issue because "[n]o reasonable jury could find equivalence…because doing so would require a determination that embedded code is substantially the same as linked code—the very thing that the construction of 'embedded' excludes. The concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Id.* at 1335 (internal citation omitted). The Federal Circuit distinguished between cases in which "literal failure to meet a claim limitation does not necessarily constitute a 'specific exclusion,'" and cases in which "the patentee seeks to encompass a structural feature that is the opposite of, or inconsistent with, the recited limitation." *Id.* (internal citations omitted).

Here, as in *Augme*, Nintendo argued a position at claim construction that did not prevail, i.e., that the "main surface" was the "operative portion of the main surface." Now, Nintendo says there is a factual dispute as to what "main surface" would mean to a POSITA by raising an argument that is "essentially identical to its claim construction argument[]," *id.* at 1335: "main surface" means only a portion of the main surface. To accept this argument would be to reopen claim construction—precisely what Nintendo faults Gamevice for attempting on other points—

---

[5] This point is not made to rehash claim construction, which would be impermissible at summary judgment. *Apple*, 2014 WL 252045, at *5. Rather, it is made to evince what a reasonable juror could conclude in light of the evidence presented.

1   and vitiate the court's construction of "main surface." With respect to the '514 Patent, Gamevice's

2   vitiation argument was rejected because Nintendo presented evidence that the accused products

3   disclosed *the court's construction* of the term at issue. Here, by contrast, Nintendo seems to be

4   presenting evidence aimed at *revisiting* the court's construction. That is not permitted. *Apple*, 2014

5   WL 252045, at *5. Thus, no reasonable juror could find the accused products disclose the main

6   surface limitation, and summary judgment of non-infringement is appropriate.

### III. *DAUBERT* MOTIONS

#### A. Legal Standard

9          Under Rule 702 of the Federal Rules of Evidence, a witness qualified as an expert may

10  testify in the form of opinion or otherwise if: "(a) the expert's scientific, technical or specialized

11  knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)

12  the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable

13  principles and methods; and (d) the witness has applied the principles and methods reliably to the

14  facts of the case." Fed. R. Evid. 702. Expert testimony that is unreliable or irrelevant must be

15  excluded. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). Whether to admit

16  expert testimony is "within the discretion of the trial court." *Sundance, Inc. v. Demonte*

17  *Fabricating Ltd.,* 550 F.3d 1356, 1360 (Fed. Cir. 2008). The Rule 702 inquiry into the reliability

18  of an expert's testimony is flexible and must be tied to the particular facts of a case. *Id.*; *see*

19  *also Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1315 (Fed. Cir. 2011).

20         In a patent case, admission of expert testimony in accordance with *Daubert* must follow

21  the law of the circuit in which the district court sits. *See Micro Chem., Inc. v. Lextron, Inc.,* 317

22  F.3d 1387, 1390–91 (Fed. Cir. 2003). The Ninth Circuit has listed factors to consider when

23  undertaking this gatekeeping determination, including, but not limited to: "(1) whether a theory or

24  technique can be (and has been) tested, (2) whether the theory or technique has been subjected to

25  peer review and publication, (3) the known or potential error rate, and (4) whether it is generally

26  accepted in the scientific community." *Wagner v. Cty. of Maricopa,* 673 F.3d 977, 989 (9th Cir.

27  2012) (citing *Daubert,* 509 U.S. at 593–94) (internal quotations omitted). Ultimately, the purpose

28

ORDER
CASE NO. 18-cv-01942-RS

of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 157 (1999) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Nevertheless, "expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010). Accordingly, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564.

### B. Steven Visser

Nintendo moves to exclude Visser's testimony because he is not, it says, a POSITA. The parties, at the outset, disagree as to the standard for admitting expert testimony on infringement or invalidity, due to discrepancies between two recent Federal Circuit cases.

In *Sundance*, the Federal Circuit held "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance,* 550 F.3d at 1363. The *Sundance* court was deciding whether a patent attorney could testify on noninfringement or invalidity when the pertinent art was "tarps or covers," the attorney had "no experience whatsoever in that art, and the attorney's experience was not "sufficiently related" to the art. *Id.* at 1362. The court found that to admit the attorney's testimony would "serve[] only to cause mischief and confuse the factfinder." *Id.* Nintendo argues that, under *Sundance*, it would be an abuse of discretion to permit Visser to testify because he is not a POSITA. Gamevice counters that Visser is in fact a POSITA—the parties disagree as to whether the pertinent art includes Visser's field, industrial design—and in any case that *Sundace* does not provide the relevant standard.

In *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360 (Fed. Cir. 2010), *aff'd sub nom. Glob.-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754 (2011), the Federal Circuit determined it was not an abuse of discretion to allow an expert who "testified that he [wa]s not skilled in designing deep fryers" to testify on infringement in a patent case about deep fryers, *id.* at

1373. The expert "had sufficient relevant technical expertise for the district court to allow him to

testify" because "the claimed invention involve[d] the selection of particular…polymer material"

and "[m]ost of the areas [the expert had] worked in…used polymers in one form or another." *Id.*

(internal quotations omitted). That is, the expert's "testimony established an *adequate relationship*

between his experience and the claimed invention." *Id.* (emphasis added). The *SEB* Court drew a

distinction between that case and "the unusual situation" in *Sundance* in which the challenged

expert lacked "any suggestion of relevant technical expertise." *Id.* (citing *Sundance*, 550 F.3d at

1361–62).

In light of *Sundance* and *SEB*, courts have reached differing conclusions about whether

experts in patent cases must be POSITAs. *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-

cv-04405, 2020 WL 1455830, at *3 (N.D. Cal. Mar. 25, 2020) (collecting cases). For at least three

reasons, consistent with other decisions in this District, *SEB* provides the way forward in this case.

*See id.*; *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457, 2014 WL 5590699, at *2 (N.D.

Cal. Nov. 3, 2014). First, it is undisputed that Visser is a qualified industrial design expert.

Industrial design is not the type of "junk science" which the court must keep out. *See Messick v.

Novartis Pharms. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014). Second, it is undisputed that Visser

is a designer, not an attorney, and thus his testimony is "more than advocacy from the witness

stand." *See Sundance*, 550 F.3d at 1364–65; *cf. Outside the Box Innovations, LLC v. Travel

Caddy, Inc.*, 695 F.3d 1285, 1296 (Fed. Cir. 2012) ("In *Sundance* this court held that it was an

abuse of discretion to permit *an attorney* to testify as an expert on issues of infringement and

validity, when the attorney was not qualified as an expert in the technical subject matter."

(emphasis added)). *See also HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir.

2020) (excluding opinion of an artist, who was not even proffered as an expert, as to technical

matters). Finally, the *Sundance* Court noted "[t]here is…no basis for carving out a special rule as

to experts in patent cases." *See Sundance*, 550 F.3d at 1360. Rather, "[a]dmission of expert

testimony [in the context of patent cases] remains subject to the Rules of Evidence and is

committed to the discretion of the district court." *Id.* (internal quotations omitted). There is no

legal basis for applying an exceptional *Daubert* standard—i.e., a standard which requires the expert to be a POSITA—in patent cases.

Because Visser has "sufficiently relevant" technical expertise, his opinion should not be excluded wholesale. Visser has a degree in industrial design and has been teaching it for more than 30 years. He has prior experience designing video game controllers for ExerTron and Samsung, and received patents for some of his designs. Visser has also designed other consumer electronics and testified in several patent cases on a wide variety of inventions, including electronic products. Gamevice has cited numerous cases where courts have allowed experts in industrial design to testify about issues similar to those that arise in the present case. Nintendo may register its objections to Visser's qualifications through cross-examination, as its objections go to the weight to be accorded to his testimony. *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1156 (N.D. Cal. 2003) ("Matters of weight, credibility and ultimate fact are for the fact-finder.").

Even were *Sundance* to govern, Visser is nevertheless a POSITA. The asserted patents claim primarily the placement of external components of a video game controller, rather than their internal electrical workings. If the patents are understood as such, the relevant art is not just mechanical or electrical engineering, but also consumer product design. Visser has 30 years of experience researching and designing consumer products, including products with internal electronic mechanisms and even some video game controllers. He is skilled in the pertinent art.

Nintendo also moves to exclude portions of Visser's opinion. First, Nintendo contends Visser gave some technical opinions outside the bounds of his experiences. The only case Nintendo cites in support of this argument is *Sport Dimension, Inc. v. Coleman Co., Inc.*, No. 14-cv-00438, 2015 WL 12732710, at *7 (C.D. Cal. Jan. 29, 2015), *aff'd*, 820 F.3d 1316 (Fed. Cir. 2016), but that case concerned whether an expert was minimally qualified under *Daubert*, not whether non-relevant portions of their opinion should be stricken. Nintendo's citation to this case demonstrates that this argument is merely another attempt to attack Visser's qualifications. Furthermore, lack of legal support aside, it appears one of Visser's alleged non-relevant opinions, about Hall sensors, is moot. Nintendo's attack on his opinion about bending versus rotation

appears to be another attempt to rehash its summary judgment arguments regarding the construction of "said other end" in Claims 1 ad 8 of the '165 Patent, discussed above, and thus is misplaced. As to Nintendo's argument about Visser's testimony regarding commercial success, Gamevice has clarified that it only purports to offer Visser as an expert on the nexus between Nintendo's patents and its products. When the issue is defined as such, Nintendo does not question Visser's qualifications to testify, but rather the strength of his testimony. This question must be left to the jury. *See DSU Med.*, 296 F. Supp. 2d at 1156. Thus, Visser is qualified to give each of these opinions.

Second, Nintendo accuses Visser of applying incorrect legal standards. With respect to the legal concepts of "obviousness to try" and "motivation to combine," Nintendo accuses Visser of failing to identify an underlying "design need or market pressure to solve a problem." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) (emphasis added). However, Gamevice has provided citations to where in Visser's report he identifies the relevant problems. While Visser does not invoke the magic words "design need" or "problem," the legal standard requires not style but substance—which Visser has provided. With respect to "single-reference obviousness," while Nintendo accuses Visser of offering conclusory opinions, that argument ignores the very meaning of obviousness: "the *predictable* use of prior art elements according to their established functions." *Id.* at 417 (emphasis added). Nintendo is welcome to cross-examine Visser about this opinion, but to exclude a POSITA's opinion about what would be obvious to a POSITA is nonsensical given the definition of obviousness.

Third, Nintendo accuses Visser of attempting to rehash claim construction regarding several terms. Nintendo states that Gamevice waived its arguments about these issues by failing to bring them up during claim construction. However, "failure to include a term at that stage cannot reasonably constitute a waiver" when "this District's Patent Local Rules…limit[]…the number of terms for which [the parties] could seek construction." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013). *See also PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, No. 16-cv-01266, 2017 WL 2180980, at *11 (N.D. Cal. May 18, 2017) ("Waiver is a

1   discretionary doctrine….” (citing *Conoco, Inc. Energy & Envtl. Int'l. L.C.*, 460 F.3d 1349, 1359

2   (Fed. Cir. 2006))). As discussed with respect to the summary judgment motions, there is a

3   difference between rehashing claim construction and offering evidence about how a POSITA

4   would construe terms in the asserted patents, which will be a live issue at trial as the jury attempts

5   to make this factual determination. Visser, as a POSITA, can offer relevant testimony on that

6   issue. *See Apple v. Samsung*, 2014 WL 252045, at *4–5. It is therefore within his expertise and

7   relevant.

8          Finally, Nintendo accuses Visser simply of repeating rather than analyzing several pieces

9   of evidence. Nintendo is correct that Visser cannot merely act as a "mouthpiece" for others and

10  parrot evidence which he has not independently analyzed. *See In re ConAgra Foods, Inc.*, 302

11  F.R.D. 537, 556 (C.D. Cal. 2014). Here, however, Visser relies on that evidence in forming his

12  own opinions. Nintendo is welcome to question Visser at trial about the strength of his

13  qualifications and analysis. His reports, however, are not so irrelevant or unreliable that they

14  should be excluded under *Daubert*.

15      **C.   Robert Wunderlich**

16         Robert Wunderlich is an economist who served as an expert for Nintendo. He provided an

17  opening report on damages, in which he opined a hypothetical license agreement between

18  Gamevice and Nintendo regarding the accused products would have resulted in a single lump-sum

19  payment of $2.9 million. He also provided a rebuttal report in which he opined on the nexus

20  between the commercial success of Nintendo's products and its asserted patents.

21         Wunderlich's opening report must be excluded because it fails to tie the "reasonable

22  royalty rate" it assumes to the facts of this case. "A 'reasonable royalty' derives from a

23  hypothetical negotiation between the patentee and the infringer when the infringement

24  began." *ResQNet.com v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010). "[A] reasonable royalty

25  analysis requires a court to hypothesize, not to speculate." *Id.* The correct measure of damages is a

26  highly case specific and fact-specific analysis." *Hebert v. Lisle Corp.,* 99 F.3d 108, 1119 (Fed. Cir.

27  1996). Nintendo contends Wunderlich reviewed extensive evidence about the parties, their prior

28

negotiations, and the market in determining a reasonable royalty rate. Nintendo is correct that Wunderlich's report touches on the *Georgia-Pacific* factors and explores evidence, and that he was not incorrect to apportion the royalty rate, as opposed to the royalty base. *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348–49 (Fed. Cir. 2018). However, "nowhere in [his] report…did [he] tie the relevant *Georgia-Pacific* factors to the…royalty rate or explain how [he] calculated a royalty rate using these factors." *Id.* at 1349. That is, "even assuming [he] properly considered…evidence, [he] failed to explain how the evidence factored into the proposed royalty rate." *Id.* at 1351. A "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks" will not suffice. *Id.* at 1350 (internal citation omitted).

The only attempt Wunderlich makes at tying the royalty rate he assumed to evidence is a statement that his assumed royalty rate is a multiplier on a rate Gamevice paid to a third party. *See* Expert Report of Robert Wunderlich, ECF No. 151-35, at 37. However, Wunderlich then admitted at his deposition that he had used the incorrect third-party royalty rate. *See* Deposition of Robert Wunderlich, ECF No. 151-236, at 11–12. He characterized his mistake as a "typo," but said the typo would not change his damages conclusion because "my analysis isn't take the [third-party royalty] rate and double it." *Id.* at 12. Thus, at his deposition, Wunderlich disavowed the only concrete basis for the royalty rate used in his report. This underscores that, regardless of what evidence Wunderlich considered in compiling his report, his calculations are not tied to that evidence. Under Rule 702, a jury cannot be permitted to rely on such unreliable testimony. Without a royalty rate, Wunderlich's damages calculation is of no use. Wunderlich's opening report must therefore be excluded.

Furthermore, the portion of Wunderlich's rebuttal report which addresses the nexus between the commercial success of Nintendo's products and the asserted patents, *see* Rebuttal Expert Report of Robert Wunderlich, ECF No. 151-37, at 10–14, must also be excluded. That conclusion is technical, and thus outside Wunderlich's area of expertise: economics. He admitted as much. *See* Deposition of Robert Wunderlich ECF No. 165-7, at 101 ("As to the details of which

patents—which products are patenting—or practicing which claims of the patents and which patents, I am really relying on the technical people."). Many of the "technical" opinions on which he relies are inapposite. For example, Wunderlich states, citing another witness, that the size of one of Nintendo's products, which embodies the '165 Patent, was integral to its commercial success—but the '165 Patent is not about the size of the claimed device. Moreover, Wunderlich cites to a conversation with a technical expert, but that conversation was about Gamevice's, not Nintendo's, products. The unreliability of Wunderlich's opinion on this matter is further underscored by the fact that he does not differentiate among the claims of each patent, while Nintendo itself does not assert its products practice each of the asserted claims. *Cf. Radware, Ltd. v. F5 Networks, Inc.*, No. 13-cv-02024, 2016 WL 590121, at *4 (N.D. Cal. Feb. 13, 2016), *order clarified*, No. 13-cv-02024, 2016 WL 9001260 (N.D. Cal. Feb. 22, 2016). This portion of the rebuttal report must therefore be excluded.

### IV.  CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted in part and denied in part. Furthermore, Nintendo's *Daubert* motion is denied, and Gamevice's *Daubert* motion is granted. Finally, the administrative motions to seal, ECF No. 150, 160, 169, and the motion to replace unsealed exhibits with sealed versions, ECF No. 165, are granted, as the parties have narrowly tailored their requests and only requested sealing of "confidential and commercially sensitive information." *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008).


**IT IS SO ORDERED**.


Dated: June 4, 2020

RICHARD SEEBORG
United States District Judge