UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GAMEVICE, INC.,

    Plaintiff,

v.

NINTENDO CO., LTD., et al.,

    Defendants.

Case No. 18-cv-01942-RS

**ORDER GRANTING MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

On March 14, 2023, Nintendo's motion for summary judgment was granted in part and denied in part. *See* Dkt. 245 ("Order"). The order held invalid many of Gamevice's asserted claims on the grounds that they were anticipated by prior art (namely, the Nintendo Switch). Shortly thereafter, Gamevice sought leave to file a motion for reconsideration under Civil Local Rule 7-9(b)(3). *See* Dkt. 246 ("Mot."). Leave was granted, and the parties each filed additional briefs. *See* Dkt. 248 ("Nintendo Br."); Dkt. 249 ("Gamevice Reply"). Gamevice argues the March 14 order erred by failing to analyze individually the validity of the asserted claims. After careful review of the parties' briefing and relevant legal authorities, the motion is granted. The prior order did not follow the proper mode of analysis under federal patent law. As such, this order concludes that several of the asserted claims do have written description support in the '119 patent and are entitled to that earlier priority date. Invalidation of these claims was thus unwarranted, and the prior summary judgment ruling will be amended.

## II. LEGAL STANDARD

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3d ed. 2000)). As such, it should not be granted "absent highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999)). Under this District's local rules, a party must first seek and be granted leave to file a motion for reconsideration, and may prevail on such a motion only by demonstrating at least one of the following: (1) "That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought"; (2) "The emergence of new material facts or a change of law occurring after the time of such order"; or (3) "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b); *see, e.g.*, *Diaz v. Tesla, Inc.*, No. 17-cv-06748-WHO, 2022 WL 17584235, at *1 (N.D. Cal. Dec. 12, 2022).

## III. DISCUSSION

### A. Reconsideration Is Warranted

To summarize briefly the steps that led to the present motion, Nintendo first filed a motion for summary judgment. *See* Dkt. 230. Relying on Gamevice's infringement averments, it argued that because its invention, the Nintendo Switch, predated the filing of the three Asserted Patents (the '713 patent, the '498 patent, and the '393 patent), it constituted prior art that anticipated (and thus invalidated) Gamevice's asserted claims. Gamevice countered that an earlier patent, the '119 patent, provided written description support for the asserted claims, and thus the asserted claims were entitled to the February 2015 priority filing date of the '119 patent. As the '119 patent predated the Switch by two years, Gamevice opposed summary judgment and argued its claims were not invalid as anticipated.

Summary judgment was granted in relevant part. The prior order agreed with Nintendo that

the '119 patent does not describe a "computing device" as that same term is used in the Asserted Patents. Rather, the '119 patent "explicitly claims the computing device with reference to a screen and a back," whereas, in the Asserted Patents, the screen and back limitations were added in "subsequent dependent claims." Order, at 7. Put simply, the '119 patent discloses only a narrow range of "computing devices" — i.e., those with screens and backs — while the Asserted Patents disclose broader ranges of devices. Claim 1 of the '393 patent, for instance, discloses simply a "computing device," which, as the prior order explained, could conceivably be read to encompass "single-board computer[s], such as the Raspberry Pi." *Id.* The order thus concluded that "the asserted claims using the term 'computing device' are not entitled to the priority filing date of the '119 patent," and were "therefore invalid as anticipated by the Nintendo Switch." *Id.* at 12.

Gamevice then sought leave to file a motion for reconsideration, and leave was granted. It contends that, even if the '119 patent specification "disclosed only computing devices with a screen and a back," the order "should have engaged in a claim-by-claim basis to see whether some of the asserted claims, and specifically the screen and back claims . . . claimed a narrower version of the 'computing device' that is fully supported by the '119 patent written description." Mot., at 7. If this were the case, then those "screen and back claims could be entitled to a different priority date than the broader claims." *Id.* They therefore would not be anticipated by the Switch, and summary judgment should not have been granted as to those claims. It cites numerous cases for the proposition that patent validity is assessed at this granular, claim-by-claim level, and that the order's flawed analysis thus constituted a "manifest failure . . . to consider material facts or dispositive legal arguments which were presented to the Court." *Id.* at 1.

To the extent the prior order relied on the (unstated) premise that the invalidation of an independent claim necessarily voids the claims that depend on it, this was clear error. Indeed, the opposite is the case: as the Federal Circuit has observed, it is "black letter law that a finding of invalidity of an independent claim does not determine the validity of claims that depend from it." *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1383 (Fed. Cir. 2008); *see* 35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple

ORDER GRANTING MOTION FOR RECONSIDERATION
CASE NO. 18-cv-01942-RS

1  dependent form) shall be presumed valid independently of the validity of other claims; dependent
2  or multiple dependent claims shall be presumed valid even though dependent upon an invalid
3  claim."); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1355–56 (Fed. Cir.
4  2001). District courts have been chastised for invalidating swaths of claims without engaging in
5  this kind of claim-by-claim analysis. *E.g.*, *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380
6  (Fed. Cir. 2002) ("[T]he district court found claims 1–3 and 6–8 of the '984 patent invalid without
7  explicitly addressing and analyzing each claim, apparently addressing only independent claim 1.
8  The district court erred by not separately addressing each claim, and on remand should do so.");
9  *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) ("Such an
10 independent evaluation is necessary because dependent claims necessarily add limitations to the
11 claims from which they depend and may therefore not be subject to the same asserted grounds of
12 invalidity."). Further, and in the same vein, "[p]atent claims are awarded priority on a claim-by-
13 claim basis based on the disclosure in the priority applications." *Lucent Techs., Inc. v. Gateway,*
14 *Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008).

15      *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991), which was cited both in the
16 prior order and by Gamevice in its present and prior briefing, provides an example of these
17 principles in action. There, Mahurkar filed a design application ("the '081 application") for a
18 "double lumen catheter" in March 1982. *Id.* at 1557–58. Mahurkar filed a similar application in
19 Canada ("the Canadian '089"), which was issued in August 1982. In 1986 and 1987, Mahurkar
20 further received two utility patents ("the '329 patent" and "the '141 patent"). Vas-Cath, another
21 catheter manufacturer, sought a declaratory judgment of noninfringement; Mahurkar
22 counterclaimed, averring infringement; and both parties moved for partial summary judgment,
23 including on the issue of validity. Vas-Cath argued the '329 patent and the '141 patent were
24 invalid as anticipated by the Canadian '089, while Mahurkar argued the patents were entitled to
25 the priority date of the '081 application. The district court concluded that the '081 application did
26 not provide written description support for the later patents, and it held they were "wholly invalid"
27 — that is, invalid as to all claims. *Id.* at 1559. On appeal, the Federal Circuit reversed. While

28

much of its discussion focused on the contours of the written description requirement, it concluded that the district court had erred by knocking out the patents wholesale. Instead, the district court should have considered "the possibility that the '081 drawings may provide an adequate § 112 'written description' of the subject matter of some of the claims but not others." *Id.* at 1567.

Gamevice generally advanced this argument in its brief opposing summary judgment, as well as its supplemental brief. *See* Dkt. 233, at 9–10; Dkt. 244, at 12–13. However, the prior order did not meaningfully entertain the argument, and consequently did not engage in the mode of analysis the law requires. Nintendo, opposing the present motion, argues the order did so when it separately analyzed the "computing device" claims and the "structural bridge" claims. Granted, the prior order did assess these groups of claims separately and reached different conclusions as to each. However, the proper analysis would have been to assess each of the relevant claims individually, rather than by analyzing each *category* of claims individually. The prior order essentially looked only at the computing devices disclosed in claim 1 of each of the Asserted Patents and, finding them unsupported by the '119 patent for want of screens and/or backs, stopped there. It did not consider that the '119 patent may provide adequate written description support for some claims but not others. It likewise did not presume the dependent claims could still be valid, even though the independent claims were invalid. Reconsideration is therefore justified, and the validity of the individual claims will be reassessed.

### B. Assessment of the "Screen-and-Back Claims"

Gamevice does not move for a blanket reassessment of all the "computing device" claims addressed in the prior order. Rather, it argues that five "screen-and-back claims" are supported by the '119 patent: claims 3, 4, 6, and 7 of the '713 patent; and claim 6 of the '393 patent. For reference, claim 1 of the '119 patent comprises, *inter alia*, "a computing device, the computing device providing a plurality of sides, each of the plurality of sides are disposed between an *electronic display screen* of the computing device and a *back* of the computing device." Dkt. 230-11 ("'119 Patent"), at 9:64–67 (emphasis added). The prior order thus concluded that the '119 patent inventors "possessed only computing devices with screens and backs." Order, at 8.

By contrast, the first independent claims of both the '713 patent and the '393 patent disclose computing devices with fewer limitations. Claim 1 of the '713 patent comprises, *inter alia*, a computing device with sides and a screen, but not a back. *See* Dkt. 213-2 ("'713 Patent"), at 17:48–53. Likewise, claim 1 of the '393 patent discloses simply a "computing device" that has at least three sides. *See* Dkt. 213-3 ("'393 Patent"), at 17:54–58. In each patent's dependent claims, however, the screen-and-back computing device becomes visible. Claim 3 of the '713 patent depends on claim 2 (which itself depends on claim 1), and it adds the following limitations:

> The combination of claim 2, in which the computing device further comprising a back, the back provides an internal surface, an external surface, and upper, lower, left and right sides, collectively the sides of the back of the computing device, the back of the computing device cooperating with the sides of the computing device.

'713 Patent, at 18:31–36. The '393 patent follows a similar tack: dependent claim 3 adds the limitation that the computing device further comprises a back, and dependent claim 6 (ultimately dependent on claim 3) adds that the computing device further comprises "an electronic display screen." *See* '393 Patent, at 18:26–28, 18:36–37.

Putting this all together, then, claim 1 of the '119 patent, claim 3 of the '713 patent, and claim 6 of the '393 patent all disclose computing devices with screens and backs. The presence of this mirrored language is telling, but it is not necessarily dispositive. As Nintendo notes, "it is often true that a purported priority patent supports a claim term more narrowly than that same claim term is construed in a later patent." Nintendo Br., at 7. Regardless of term similarity, "the construction . . . that must be supported by the written description of the [priority application] is the construction given by the district court for the term as used in the [asserted patents]." *Id.* at 8 (alterations in original) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1311 (Fed. Cir. 2008)). Here, "computing device" has been construed as "electronic equipment controlled by a CPU," making the invention described in the asserted screen-and-back claims, effectively, "*electronic equipment controlled by a CPU and which includes a back and an electronic display screen.*" The question is whether the '119 patent provides written description for those inventions.

The answer is yes. The specifications are materially indistinguishable in their descriptions of the computing device, including by stating it may take the form of "a tablet computer, smart phone, notebook computer, or other portable computing device." '119 Patent, at 3:17–19; *accord* '713 Patent, at 4:34–36; '393 Patent, at 4:43–45. The '119 specification at times includes functional diagrams of the computing device that are identical to those in the Asserted Patents. *Compare* '119 Patent figs. 6 & 7, *with* '713 Patent figs. 6 & 7, *and* '393 Patent figs. 6 & 7. Nintendo conceded in its original motion that the '119 patent "expressly describes the computing device of the supposed invention as having both a back and a screen," and that certain disclosures within the patent "only make[] sense with a computing device that includes a back and a screen." Dkt. 230, at 15–16. Meanwhile, nothing in the '119 specification "characterizes the computing devices of the '119 patent as functional, complete, commercially available, finished, or otherwise." Gamevice Reply, at 4. The invention disclosed in the '119 patent thus appears to map squarely onto the devices disclosed in claim 3 of the '713 patent and claim 6 of the '393 patent.

Nintendo appears to argue that when the '119 patent uses the term "computing device," it is referring only to a "*structurally complete, functional* device[] with a screen and a back." Nintendo Br., at 9 (emphasis added). By contrast, the Asserted Patents disclose a "computing device" that is "understood as a circuit board and a collection of parts." *Id.* at 1.[1] Thus, the only thing the screen-and-back claims do is add "a screen and a back as additional parts to a collection of parts." *Id.* This argument is both unpersuasive and insincere. For one thing, Nintendo did not premise its motion for summary judgment on the idea that the '119 patent disclosed only a "structurally complete, functional [computing] device."[2] Rather, the prior order — and Nintendo's prior argument — turned simply on whether the '119 computing device included a back and a

---

[1] Nintendo repeats this "collection of parts" formulation, and permutations like "collection of components" and "non-functional collection of bits and pieces," nearly 30 times. *See* Nintendo Br. at 1–5, 9–11, 14.

[2] As both the claim construction order and Nintendo's own expert note, it's not even clear what a "functional" or "complete" computing device would mean in this context. *See* Dkt. 241, at 6; Dkt. 231-12 ¶ 193.

screen. *See* Dkt. 230 *passim*. As observed above, it clearly does. More importantly, for the purposes of this analysis, the breadth of the computing device described in claim 1 of both the '713 patent and the '393 patent is not controlling. These independent claims are broader than those disclosed by the '119 patent; they therefore are not entitled to its priority filing and are still invalid as anticipated. However, the screen-and-back claims, with their additional limitations, bring those computing devices into clear alignment with the invention disclosed in the '119 patent. Claim 3 of the '713 patent and claim 6 of the '393 patent do not, in other words, merely throw a screen and a back onto a pile of random parts; rather, they integrate a screen and a back into "electronic equipment controlled by a CPU."

Claim 1 of the '119 patent thus teaches the same device with the same limitations, and it accordingly provides written description support for claim 3 of the '713 patent and claim 6 of the '393 patent. Since claims 4, 6, and 7 of the '713 patent each depend on claim 3, they also find written description support in the '119 patent. *See MEMS Tech. Berhad v. ITC*, 447 Fed. App'x 142, 157 (Fed. Cir. 2011). The five screen-and-back claims are entitled to the priority filing date of the '119 patent and, therefore, are not anticipated by the Nintendo Switch.

### IV. CONCLUSION

For the reasons stated above, the motion for reconsideration is granted. Claims 3, 4, 6, and 7 of the '713 patent, and claim 6 of the '393 patent, are entitled to the priority filing date of the '119 patent. They are not invalid as anticipated, as the prior order concluded, and summary judgment is denied with respect to these five claims. The prior order is so amended.

**IT IS SO ORDERED**.

Dated: June 14, 2023

RICHARD SEEBORG
Chief United States District Judge