UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMEVICE, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>NINTENDO CO., LTD., et al.,<br><br>        Defendants. | Case No. 18-cv-01942-RS<br><br>**ORDER DENYING GAMEVICE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING NINTENDO'S MOTION FOR SUMMARY JUDGMENT** |

# I. INTRODUCTION

This is a patent infringement action brought by Gamevice, Inc. ("Gamevice") against Nintendo of America, Inc. and Nintendo Co., Ltd. ("Nintendo"). The alleged infringing product is the Nintendo Switch ("Switch"). Parties now bring cross-motions for summary judgment. In its motion for summary judgment, Gamevice avers that Nintendo infringes on claims 3, 4, 7, and 16 of U.S. Patent No. 9,808,713 ("the '713 patent") and claim 6 of U.S. Patent No. 10, 391,393 ("the '393 patent") (together, the "asserted patents"). Conversely, Nintendo moves for summary judgment on the theory that the Switch does not infringe any of Gamevice's patents, seeking a judgment of noninfringement as a matter of law. For the reasons discussed below, Gamevice's motion is denied and Nintendo's motion is granted.

# II. BACKGROUND

Previously, Nintendo filed a motion for summary judgment against Gamevice, which was granted in part and denied in part. Specifically, the prior order concluded that all asserted claims

except for claim 16 of the '713 patent were invalid as anticipated by the Switch. Gamevice then filed a motion for reconsideration as to the prior summary judgment order, arguing that the court neglected to analyze individually the validity of the asserted claims. The prior summary judgment order was consequently amended to reflect the correct mode of analysis and several claims were no longer deemed invalid because of anticipation by the Switch. As it stands, six of the remaining asserted claims are not invalid by anticipation: claims 3, 4, 6, 7, and 16 of the '713 patent and claim 6 of the '393 patent. These claims are entitled to a priority date preceding the Switch.

Gamevice and Nintendo now file cross-motions for summary judgment. Gamevice argues for summary judgment on the basis that Nintendo is precluded from asserting noninfringement because of judicial estoppel and law-of-the-case doctrine. Nintendo, conversely, argues that it is entitled to summary judgment because at least three of the claim limitations in the asserted claims are incongruous in the Switch and Gamevice's patents.

### III. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the burden of proof to "make a showing sufficient to establish…the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant succeeds in demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). Evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that

precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

### IV. DISCUSSION

#### A. Gamevice's Motion for Summary Judgment

Gamevice moves for summary judgment on the theory that the earlier finding of invalidity by anticipation of thirteen of the asserted claims "necessarily establishes that the Switch satisfies those same claim limitations for any claims that pre-date the Switch." Dkt. 255 at 1. Gamevice argues that under either judicial estoppel or law of the case doctrine, the Court must rule that the Switch infringes on the claims not deemed invalid by anticipation. *See* Dkt. 245. Nintendo disagrees, citing *Evans Cooling Systems, Inc. v. General Motors Corporation* to argue that Gamevice's accusations of infringement are only binding on Gamevice. Moreover, Nintendo argues that Gamevice's averments of infringement permitted Nintendo to plead in the alternative and assert infringement for its invalidity defense *only*, without losing its ability to maintain its position of noninfringement. 125 F.3d 1448 (Fed. Cir. 1997).

As a threshold matter, anticipation occurs when a single prior art reference "expressly or inherently describes each and every limitation set forth in the patent claim[s]." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2022). An accused infringer challenging validity must prove its case by clear and convincing evidence. *Baxter Int'l, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054, 1058 (Fed. Cir. 1996). The Federal Circuit has held that where the entire basis of a patentee's suit is infringement, an accused infringer may assert anticipation by its own product in the form of alternative pleading to establish a *prima facie* case of invalidity, while still maintaining noninfringement as a defense. *See Evans Cooling*, 125 F.3d at 1451; *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). This is because the patentee's own allegations of infringement may be relied upon by an accused infringer to establish their *prima facie* defense of invalidity by anticipation. *Id.*; *see also IXYS Corp. v. Adv. Power Tech., Inc.*, No. C 02-03942 MHP, 2004 WL 540513, at *5 (N.D. Cal. Mar. 18, 2004) (In *Evans Cooling*, "[t]he court's conclusion that the infringement claim itself fulfilled defendant's burden of

demonstrating identity…served principally to truncate litigation that was logically doomed to failure").

     *i.*     *The effect of the court's anticipation ruling*

In Gamevice's motion for summary judgment, the primary contention between the parties is whether the court's prior anticipation ruling necessitates a finding of infringement in the instant order. Gamevice argues that if a product does not infringe asserted claims, then it cannot invalidate them, and so the converse must be true. Dkt. 262 at 7. To support its argument, Gamevice cites to *ThinkOptics, Inc. v. Nintendo of America, Inc.*

> The Federal Circuit's decision in *Vanmoor* prohibits plaintiffs from arguing that "a product contains each and every element of the patented invention for infringement purposes, but that the same product does not contain each and every element of the patented invention for invalidity purposes." *U.S. Ethernet Innovations, LLC v. Texas Instruments Inc.,* No. 6:11–cv–491, 2014 WL 1347994, at *2 (E.D. Tex. Apr. 3, 2014)

No. 6:1-cv-455, 2014 WL 3347531 at *2 (E.D. Tex., Jul. 3, 2014). This rule ensures that the plaintiff's defense against invalidity is logically consistent with its own allegations in a patent infringement case. However, the patentee in *ThinkOptics, Inc*. was not asserting infringement. Instead, the patentee was insisting that, for its anticipation argument, the defendant had failed to show that the accused product had "disclosed every element of the claimed invention." *Id*. The Court held that "*Vanmoor* has not been extended to cases where the asserted reference and accused products differ in relevant respects." *Id*. Since the patentee in that case was not alleging infringement, the defendant could not rely on the patentee's allegations to make an *Evans Cooling/Vanmoor* pleading. *See id*. That is not the case here, where the basis of Gamevice's suit is patent infringement.

The *Gammino* cases are instructive. *Gammino v. Southwestern Bell Tel., L.P.*, 512 F. Supp. 2d 626 (N.D. Tex. 2007) ("*Gammino/SWB*") (affirmed only as to the invalidity claim by the Federal Circuit in *Gammino v. Southwestern Bell Tel., L.P* 267 Fed. App'x 949 (Fed. Cir. 2008)); *Gammino v. Sprint Comm'n Co. L.P.*, No. 10-2493, 2011 WL 3240830 (E.D. Pa. Jul. 29, 2011) ("*Gammino/Sprint*"). In *Gammino/SWB*, the court "adopt[ed], without deciding" the patentee's

"interpretation of the claims of his patents" for the purposes of the defendant's motion for summary judgment of invalidity. *Gammino/SWB*, 512 F. Supp. 2d. at 632. However, the Court separately turned to claim construction to do a noninfringement analysis for the remaining claims and held that the patentee had "failed to meet his burden" that the accused product infringed the asserted patents in that case. *Id*. at 638, 643. Here, those claims are 3, 4, 6, 7, and 16 of the '713 patent, and claim 6 of the '393 patent. These claims (except for claim 6 of the '713 patent) are the basis of Gamevice's instant motion. Like Gammino, Gamevice may not receive the benefit of its infringement allegations without the necessary infringement analysis, which is precisely the result if its motion is granted. Gamevice insists that after finding invalidity, the *Gammino/SWB* court conducted claim construction for its noninfringement analysis of "ten *different* SWB services, which were not prior art to the Gammino patents." Dkt. 262 at 6 (emphasis in original). This argument confuses Gamevice's position. Gamevice seeks consistency with the court's prior summary judgment order, where the Switch was found to have anticipated most of the patents claims, but not for five of the remaining asserted claims for which Gamevice now seeks summary judgment. The five claims at issue now were given a priority date that pre-dated the Switch's introduction to the market. Indeed, if Gamevice's interpretation of *Gammino/SWB* is adopted, then the court should engage in a traditional infringement analysis of the six asserted claims, as, based on the court's prior summary judgment order, the Switch is not prior art to a claim with a priority date that precedes the Switch's on-sale date.

In *Gammino/Sprint*, which followed *Gammino/SWB*, the Court further explained this argument and stated that the patentee's infringement allegations allowed the Court to forego its traditional infringement analysis for a judgment of invalidity. 2011 WL 3240830 at *3. In that case, the Court made a collateral estoppel determination that a prior finding of invalidity could be raised as a defense to a "subsequent attempt to enforce the patent." *Id.* at *5. Where pertinent to the instant order, however, the court explained that, in *Gammino/SWB*:

> *Gammino's own interpretation* of the claims of his patents was a binding admission that prior art…[thus] invalidated the asserted claims of his patents. Importantly, because the court based its holding

> on Gammino's admissions, it did not perform the typical 'all-elements' analysis to determine if each component of Gammino's claims was present in Southwestern Bell's pre-existing products."

*Id.* at *3 (emphasis in original). This statement is instructive for two reasons. First, it explains what bears repeating, that the patentee's infringement allegations are binding on it but not, necessarily, the accused infringer. Second, it explains that because the Court's holding was based on essentially a limited stipulation that the accused product was infringing, a finding of invalidity by the Court allowed it to forego its traditional infringement analysis.[1] *Id.*; *see also id.* at *9 ("Because the Texas court invalidated Gammino's patents on the basis of his binding judicial admissions, it did not actually litigate the issues central to the validity of the unasserted claims" (internal citation omitted)). Gamevice correctly points out that in *Evans Cooling* and *Vanmoor*, all the asserted claims were invalidated and there was nothing left to litigate. This is not the case here. Six claims remain which were not determined to be invalid by anticipation. Gamevice insists that these claims be given the same treatment as any invalid claims in the cited cases. To the extent that Nintendo pled infringement for the purposes of its summary judgment motion of invalidity, Gamevice argues that pleading should be a binding admission by Nintendo and should permit the court to forego its traditional *Markman* infringement analysis. This argument is unworkable because it unfairly burdens the *Evans Cooling* pleader and allows the patentee to succeed on its infringement allegations, i.e. the entire basis of its suit, without satisfying its burden of proving infringement. *See Agawam Co. v. Jordan*, 74 U.S. 583, 609 (1868).

*Ocean Innovations, Inc. v. Archer* is also illustrative to reveal that an accused infringer does not admit infringement by arguing that the asserted patent is invalid. 145 F. App'x 366 (Fed. Cir. 2005). In that case, the Court rejected the patentee's argument that the accused infringer "admitted infringement" by "advancing [an] alternative theory for non-liability," that is, noninfringement or, otherwise, invalidity. *Id.* at 371 n.3. Gamevice points out that the accused

---

[1] In *Markman v. Westview Instruments, Inc.*, the Federal Circuit explained that "[a]n infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." 52 F.2d 967, 976 (Fed. Cir. 1995).

infringer in *Archer* lost its invalidity defense whereas Nintendo prevailed for most of the asserted claims, so this proposition is inapplicable. This argument is unpersuasive. First, to the extent that Gamevice's motion focuses on five of the remaining claims that were *not* successfully deemed invalid (i.e. for which Nintendo lost its invalidity defense), it conforms to Gamevice's own interpretation of the *Archer* proposition. However, even if Gamevice is correct that the surviving claims must receive the same treatment as the invalid ones because Nintendo prevailed on its anticipation argument *at all*, *Archer* makes no mention that the defendant is barred from advancing an alternative theory of non-liability once it is successful on one.

      Where applicable, the cases above can be synthesized to stand for the proposition that if the basis of plaintiff's lawsuit is patent infringement by the "device that was put on sale," a defendant is allowed to rely on the plaintiff's allegations to assert a defense of invalidity based on anticipation. *See Evans Cooling*, 125 F.3d at 1451. This is because the analyses for anticipation and infringement are the same. *See Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). Thus, because the Federal Circuit has provided defendants with a method to satisfy an evidentiary burden for their invalidity defense in the form of alternative pleading, it cannot require that raising a defense based on the plaintiff's allegations binds the defendant. This would turn the *Evans Cooling* rule, and, indeed, the principle of alternative pleading, on its head. If Gamevice's argument is accepted, it would render Nintendo's alternative pleading a concession of infringement, entirely collapsing Nintendo's ability to use the defense of invalidity and force it to abandon the position that it has maintained since the beginning – noninfringement of the asserted claims. Nintendo only pled satisfaction of all of the asserted patent claims to make a *prima facie* showing of invalidity, which it was permitted to do. Denying a defendant in a patent infringement suit the ability to raise objections of noninfringement where the Federal Circuit has provided a procedure to do so would be unjust.

      *ii.   Judicial estoppel and law of the case doctrine*

Gamevice argues that judicial estoppel or law of the case doctrine require the Court to hold that for five of the remaining asserted claims, the Switch infringes. In that Nintendo did not

ORDER DENYING, GRANTING CROSS-MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 18-cv-01942-RS
7

concede infringement by making an *Evans Cooling* pleading, Gamevice's judicial estoppel and law of the case doctrine arguments must fail.

### iii. Claims 3, 4, 7, and 16 of the '713 patent and claim 6 of the '393 patent

The balance of Gamevice's motion is mostly premised on its unpersuasive argument that Nintendo is bound by its alternative theory of non-liability, therefore the Court must hold the five claims at issue in the instant motion as infringed by the Switch. For the reasons discussed above, the remaining claims must undergo a traditional infringement analysis under *Markman*. *See* 52 F.2d at 976. Therefore, as to Gamevice's averments of infringement regarding claims 3, 4, 7, and 16 of the '713 patent and claim 6 of the '393 patent, the motion is denied for being premised on Gamevice's rejected argument.

### B. Nintendo's Motion for Summary Judgment

Nintendo moves for summary judgment that the Switch does not infringe any of Gamevice's asserted patent claims and seeks a judgment of noninfringement as a matter of law. Pursuant to 35 U.S.C. § 271, direct infringement is the making, using, or selling of a patented invention in the United States during the patent term. A patent is directly infringed if a product practices "each and every element of the claimed invention." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007). A patent may be directly infringed in two ways, either by literal infringement or the doctrine of equivalents, or non-textual infringement.

There are two steps to a literal infringement analysis. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman I*, 52 F.3d at 976 (internal citation omitted). The first step involves claim construction, where the Court must determine, as a matter of law, how a patent's claims must be construed. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-85 (1996); *see* Dkt. 241. The second step, whether the accused device infringes the construed claims under either literal infringement of the doctrine of equivalents, is a question of fact. *Markman II*, 517 U.S. at 384-85. Summary judgment of a literal infringement assertion is appropriate if the court determines that "no reasonable jury could find

United States District Court
Northern District of California

that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (citing generally *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996)).

      *i.*    *ITC Investigations*

As a preliminary matter, parties disagree on the extent to which the ITC investigation may be relied upon to show infringement. Gamevice's expert reports will form the basis of their infringement contentions, and the ITC proceedings may be relied upon as persuasive authority, particularly where the claims have been construed here consistent with the ITC's determinations.

      *ii.*    *Claim limitations*

In its motion for summary judgment, Nintendo argues that Switch does not infringe on the asserted patents because at least three of the asserted patent's claim limitations cannot be proven by Gamevice. Nintendo argues that the "passageway" limitation, the "confinement structures" limitation, and the "apertures" that "secure" limitation are not practiced by the Switch. In addition to these limitations, Nintendo maintains that Gamevice incorrectly characterizes the "computing device" limitation of its claims as an "arbitrary collection of parts" that cannot be considered a computing device.

      a.    Passageway

The first limitation Nintendo insists that Gamevice cannot prove is the "passageway" limitation. The term "passageway" appears in claim 1 of each of the asserted patents and claim 16 of the '713 patent. This limitation was construed to mean "a space that accommodates a communication wire" in accordance with Gamevice's construction. Further, the term was construed this way because "the use of the article 'a'…connotes a discrete space rather than any free-floating and ambiguous zone through which the wire may pass." The asserted patents recite a "structural bridge" that is comprised of a "passageway." Claim 16 of the '713 patent, however, differs slightly, calling for "an electronics communication passageway between the first and second confinement structures."

Gamevice's expert witness, Dr. Singhose, contends that the "upper frame in the Switch," is

ORDER DENYING, GRANTING CROSS-MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 18-cv-01942-RS
9

1   the "structural bridge" that is comprised of the "passageway." Gamevice argues that the claim
2   recites a structural bridge that merely "comprises" of a passageway, "so there is no requirement
3   that the structural bridge be physically co-extensive with the passageway." Gamevice further
4   contends that the passageway need not be straight as wire, by its nature, is flexible. Nintendo
5   argues that there is a portion of the structural bridge that is "choked off" from any communication
6   wires, and, thus, by definition, cannot accommodate the wires. This, Nintendo argues, runs afoul
7   of the claim as construed. Nintendo also insists that the circuitous nature of the communication
8   wires in the purported "structural bridge" indicates that there is no "passageway."

Whether the "passageway" must comprise entirely the space Gamevice defines as the structural bridge or whether it may just be a part of it is a disputed material fact. The claim recites "the passageway promotes communication between the first communication link and the computing device, the passageway further promotes communication between the second communication link and the computing device." The fact that a portion of the upper frame cannot accommodate a communication wire, and is therefore not a passageway, does not necessarily mean that the remainder of the upper frame, which can accommodate a communication wire, is not a passageway either. The term "comprises" means "including but not limited to" which requires the inclusion, at least, of what is recited. *See CIAS, Inc. v. All. Gaming Corp.,* 504 F.3d 1356, 1361 (Fed. Cir. 2007). Further, whether the passageway need be non-circuitous to be considered a passageway is also a disputed fact, because, as Gamevice points out, wires are flexible by nature. Thus, the "passageway" limitation cannot provide a basis for judgment as a matter of law.

b.   Confinement structures

The "confinement structures" limitation, however, breaks in the opposite direction. Nintendo insists that Gamevice cannot prove that the Switch practices the "confinement structures" limitation. This term was construed as "physical components that hold(s) a computing device." Dkt. 241. The term appears in claim 1 of each asserted patent and claim 16 of the '713 patent. Gamevice argues that the rails on the sides of the Switch are confinement structures that

are "separate and distinct components." Dkt. 267 at 12. To support its argument, Gamevice insists that the rails are screwed onto the "computing device" and a user must attach the Joy Con controllers to the rails and "hold[s] the controllers, which are connected to the [rails], which in turn are holding the computing device." Dkt. 267 11-12. Nintendo disagrees. It argues that the rails are part of the Switch and "do not hold or confine any part of the Switch that Gamevice says is the 'computing device.'" Dkt. 263-4 at 18.

Gamevice's arguments are unpersuasive. First, the rails do not hold all components of what Gamevice asserts is the computing device. Dkt. 263-4 at 19. Specifically, the back cover of the "computing device" is not "held" by the rails simply because they are in "pressing contact with the computing device and fastened using screws." Singhose Decl. ¶ 41. Furthermore, the patent specification language that the confinement structures are meant to apply "sufficient compression load…on the computing device" to hold them, but simply being "in contact" with the computing device cannot comport with this specification. Gamevice's observation that a user holds the Joy Con controllers which are attached to the console by the rails also does not translate to the rails holding the "computing device." Simply attaching two rails to the side of the device do not constitute "confinement structures" and Gamevice cannot prove this limitation in the Switch.

c. "Apertures" that "secure"

Claims 1 and 16 of the '713 patent recite a "pair of control modules" with "input module apertures" that "secure[s] an instructional input device." The term "input module apertures" has not been construed by the court, however Gamevice contends that the Joy Con controllers contains features that satisfy the "input model apertures" limitations of the '713 patent. Specifically, Gamevice argues that the Joy-Con controllers are "a pair of control modules," each of which "has buttons and a joystick that extend up through the holes of the Joy-Con." Nintendo insists that the holes in the Joy-Cons do not secure the buttons and joysticks, only let them "pass through and move within" because there is a .2mm ring around the holes. Furthermore, the joysticks are secured by screws. Dkt. 263-4 at 20.

The plain and ordinary meaning of the term aperture is just "hole." While the apertures

themselves cannot secure anything, the parties agree that the buttons are held in by a flange at the bottom. Nintendo argues that this means the flange, not the apertures, are securing the buttons. Gamevice disagrees because "if the holes were bigger than the flange, the buttons would fall out." Even if the Joy-Con's buttons, consisting of a flange and circuit board, comport with the claim limitation, the joysticks are not secured with the apertures but with screws. Gamevice concedes that the joysticks are part of what it deems the "pair of control modules" as recited by the patent but has failed to argue persuasively that the joysticks are secured by the "input model apertures" and not the screws. The fact that a gap exists between the apertures and joysticks to facilitate their easy movement further supports Nintendo's argument that the apertures do not secure the joysticks. Thus, Gamevice cannot prove this claim limitation.

d. Computing device

Nintendo argues that the Switch console itself is a computing device but insists that Gamevice's theory of what constitutes a "computing device" is overbroad and consists of elements that are not "electronic equipment[s] controlled by a CPU," per the claim construction. Dkt. 263-4 at 21-22 (quoting Dkt. 241 at 19). The ITC determined that Gamevice's "parts-of-the-Switch" theory, as Nintendo calls it, does not comport with the "computing device" limitation. Dkt. 268 at 11. This argument is immaterial for the purposes of a noninfringement analysis, which requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys.*, Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). The limitation "computing device," both parties agree, is present in the Switch. Whether Gamevice cannot show "distinct limitations" as recited by the patent is an issue of material fact a juror is entitled to make.

V. CONCLUSION

For the reasons above, Gamevice's motion for summary judgment is denied. Nintendo's motion for summary judgment is granted because Gamevice cannot raise a genuine issue of material fact as to the confinement structures and the "apertures" that "secure." Thus, claims 3, 4,

6, 7, and 16 of the '713 patent and claim 6 of the '393 patent, all of which recite those limitations, are not infringed by the Switch. Nintendo's administrative motion to file under seal certain exhibits attached to the declaration of David Pekarek Krohn and an unredacted version of its Motion for Summary Judgment, Dkt. 263, is also granted. Nintendo's motion is narrowly tailored and only requests sealing of "confidential and commercially sensitive information." *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008).

**IT IS SO ORDERED**.

Dated: October 31, 2023

RICHARD SEEBORG
Chief United States District Judge